## 60220. DOTSON v. HENRY COUNTY BOARD OF TAX ASSESSORS.

DEEN, Chief Judge.

This case involves an appeal from the assessment of real estate taxes for the year 1979 on the appellant's 266-acre farm, a part of which was open meadow land used to graze dairy cattle, a part woods, a part flood plain, and a part on which the farmhouse is located. The main contentions are that the appraisal methods did not comply with Code § 92-5702, that the taxes assessed are confiscatory in nature, and that the finding violates uniformity and equality in the assessment of rural property.

The appellant and her husband have lived on and run the acreage as a dairy farm for the past 20 years, during which time ad valorem taxes have increased from $200 to $4,300. The farm has expenses of approximately $5,000 per year for dairy feed, fertilizer and veterinary services, and constitutes the family's sole income except for Social Security and a small pension. It is uncontroverted that taxes assessed cannot be paid without selling off timber or otherwise going into capital. The owner therefore appealed the valuation of $1,425 per acre to the Board of Equalization, which lowered it to an average of $1,220.77. This ruling was appealed to the Henry County Superior Court and by that judge lowered to $1,088 per acre. From the latter assessment the case comes to this court.

In arriving at valuation, the assessors considered five "comparable" sales, one in the neighborhood of $2,200 per acre, and another witness, an appraiser, testified that he based his valuation on five such sales, four of which were speculative and the other one for a private airport.

The plaintiff's witnesses, who zeroed in on the value of the land for its existing uses of timber and grazing land, placed values of between $200 and $700 per acre. A careful reading of all the testimony, as well as the brief of the appellee, make clear that the underlying disagreement here is the extent to which, in an area believed to be shifting from traditional agricultural to speculative subdivision and commercial uses, "highest and best use" shall take precedence over "existing use" in the determination of value. Counsel states: "Appellee submits that Appellant's view of 'value' is based on something other than Ga. Code Ann. § 92-5702, which

clearly defines 'value' in terms of an exchange, not in terms of present use." We disagree with this conclusion, based on an analysis of the statute itself and on the latest decision of the Supreme Court on this subject, *Chilivis v. Backus,* 236 Ga. 88 (222 SE2d 371) (1976).

The prime duty of this court is to construe the intent of the Legislature in the wording of the statute. The last amendment, while substituting "fair market value" for "cash sale" specifically retained the classic definition of market value in terms of willing buyer/willing seller arms length transactions, as modified by three specific criteria to be used in determining this value (zoning, existing use, and deed restrictions) plus a catchall phrase allowing the use of "any other factors deemed pertinent." It is significant that while under this fourth criterion highest and best use may be considered, the Legislature did not base market value on highest and best use, nor did it list highest and best use as a specific criterion. An honest evaluation of the state of real property sales in the present economy of this country fosters the conclusion that in an area such as that described in rural Henry County in the 1970's a basing of fair market value primarily on sales for developmental purposes (as the testimony shows was done in the instant case) will in 100 percent of the cases yield a figure having no relation to that obtained by a willing seller/willing buyer contract for the purpose of continuing the existing agricultural or dairy use of the property. In such an economy, basing market value for tax purposes on acreage intended for income from agriculture on the basis of prior speculative acreage sales has two disadvantages: first, the speculative use indubitably ballooned that value at the time of that sale, and secondly, if subdivision and commercial expansion did not follow rapidly on sales, the remaining land would not in fact bring an equivalent price in the open market. "Highest and best use" is thus itself a much more speculative assigned value than existing use. Large tracts of acreage in Henry County, under the evidence here, are not worth more than $200 to $700 for agricultural purposes — in fact one of the defendant's witnesses said he knew of no sales for purely agricultural purposes; yet, this part of the county is admittedly rural and in general the existing uses are agricultural uses. It is true that one of the assessors stated that they took these facts into consideration and in fact assigned values somewhat lower than what they would expect the land to bring on a speculative sale, but the point is that the existing use is agricultural and the assigned value is at least twice the estimated appraisal value for use as woods or dairy farming. In considering existing use, where the use is income producing, it would appear that the income capitalization method used by one of the plaintiff's expert witnesses should at least be considered under Code

§ 92-5702 (4) (now Code § 91A-1001 (b) (B) (iv)), this being a standard method of arriving at value.

It might further be pertinent to point out that the subdivision (a) (knowledgeable buyer/willing seller definition of market value) cannot be determined until *after* subdivision (c) (existing use, etc.) has been used as a yardstick. It follows that where the assessed value is based primarily on sales of other property, and all the so-called comparable sales are for speculative or development purposes (with the exception of one which was intended for use as a private airport) the formula has not been properly applied.

In *Cobb County Bd. of Tax Assessors v. Sibley,* 244 Ga. 404, 405 (260 SE2d 313) (1979), where "the trial judge found . . . that the value was determined by the sale price of other vacant lands purchased for development; that the assessors relied upon the property's highest and best use; that the sales relied upon did not accurately reflect the value of other vacant land because such sales were often for special purposes such as schools or parks, or speculative development" (in other words, where existing use did not function as a bona fide yardstick in determining value) the trial court properly remanded the case for reconsideration.

The trial court here correctly held that the assessors erred in considering foreclosure sales as comparable sales, and held that they erroneously over-valued a restricted use flood plain which comprised a significant portion of the land being appraised. The court erred, however, in approving a valuation which tilted market value in favor of an assumed "highest and best use" to appear from future speculation and development, rather than first determining the criteria for zoning, existing use, and deed restrictions, if any, at which time other pertinent factors may be considered. *Chilivis v. Backus,* 236 Ga. 88, supra, was written before the Legislature substituted "fair market value" for "cash price" in subsection (a) of Code § 92-5702; the specific criteria were, however, a part of the statute at that time and the court held that "highest and best use" is a factor only if it would reflect the amount that would be realized from a cash sale of the property; that valuation will not be confined to actual use alone, and that all criteria added by the General Assembly (see Ga. L. 1975, p. 96) are to be considered.

*Judgment affirmed in part and reversed in part with direction that the case be remanded for reconsideration to the Henry County Board of Tax Assessors. Birdsong and Sognier, JJ., concur.*

SUBMITTED JULY 7, 1980 — DECIDED
SEPTEMBER 4, 1980 —

*G. Richard Chamberlin,* for appellant.
*Wade Crumbley,* for appellee.