67573, 67574. SIBLEY et al. v. COBB COUNTY BOARD OF TAX ASSESSORS et al.; and vice versa.

QUILLIAN, Presiding Judge.

This is an appeal and a cross-appeal from an order of the trial court holding that the Cobb County Board of Tax Assessors (tax assessors) properly re-evaluated Cobb County "rural land" for 1977 and subsequent years. This is the third appearance of this issue before our appellate courts. See *Cobb County Bd. of Tax Assessors v. Sibley*, 244 Ga. 404 (260 SE2d 313); and *Cobb County Bd. of Tax Assessors v. Sibley*, 248 Ga. 383 (283 SE2d 452). The Supreme Court transferred this appeal to us as a matter within our jurisdiction.

Cobb County tax assessors did a complete reassessment of the entire Real Property Digest in 1977 for the first time since 1965. However, this does not mean that different parcels of property had not been revalued during that time. The total revaluation of the Digest resulted in an average increase of 300% to 400% over the 1976 valuation for rural land. Parcels belonging to the plaintiffs exceeded those percentages: Hyde — 1,158%; Power — 431%; McAfee — 1,822%; Sibley — 565%; and McLain — 1,740%. Appeals followed, and from an adverse decision by the Cobb County Board of Equalization, plaintiffs filed a statutory appeal to the Cobb Superior Court. At the same time they also filed a petition in equity requesting similar relief. The trial court dismissed the equitable action but granted relief in the statutory proceeding. Appeal followed by the tax assessors to the Supreme Court which affirmed the trial court. They found that the assessors had relied on the sale price of other rural lands which reflected the property's highest and best use, and that some of those sales were for special purposes such as schools or parks, or were for speculative development and that while "existing use" of property was "not the exclusive factor in determining market value" the evidence supported the finding of the trial court that the tax assessors failed to consider the existing use of "vacant land" — which was the term used by Cobb County to describe rural land. Following receipt of the remittitur from the Supreme Court in 1980 the assessors made a re-evaluation of all rural land for 1977. Each parcel was considered

separately and adjustments were made in some parcels. Plaintiffs were still dissatisfied with valuations placed upon their lands which they contend were held primarily for agricultural, farming and timber purposes.

A second action was instituted by plaintiffs and the trial court enjoined collection of additional taxes for the years 1977 through 1980 based on recent valuations. That order was appealed to the Supreme Court. They held that the digest should have been remanded for proper reassessment for the years 1977 through 1980 rather than enjoining the assessors from collection of additional taxes from owners of rural land who had paid taxes for those years on the basis of the 1976 digest. Accordingly, they vacated so much of the trial court's order as compelled settlement of previously-paid tax obligations and remanded "to the tax assessors the question of proper assessments on all 'rural land' to be used in calculating taxes for the years 1977 through 1980." 248 Ga. at 384.

Following remand of the Supreme Court's decision, the tax assessors compiled a computer printout of 5,111 parcels of land in the county which exceeded 5 acres. Of that group, 1,206 were zoned commercial, industrial, or subdivision; 352 had been sold since 1976 or were being held by developers; 153 were tax exempt, and 69 had been erroneously included in the list. Of the remaining 3,331 parcels — 1,471 were excluded as being 10 acres or less and were classified as "home sites." The remaining 1,860 parcels were classified as "vacant land," in essence "rural land," and were reassessed.

Recent sales of rural land in Cobb County for agricultural purposes were almost nonexistent. The Supreme Court had set aside the first valuation by the assessors for including as comparable sales, rural land which had been sold for developmental or special purposes — commercial, residential, or industrial. *Cobb County Bd. of Tax Assessors v. Sibley*, 244 Ga. 404, supra. Those parcels had been sold for their "highest and best use" whether it was industrial, commercial, or housing development. It is readily seen that those type sales had little comparative value to rural land presently used for agricultural purposes. Thus, the tax accessors now referred to sales of rural land in the surrounding counties of Paulding, Douglas, Cherokee, and Gwinnett. Following comparison of those prices with their evaluation of Cobb County rural land assessments, they reduced their evaluation by an average of 10 percent.

Plaintiffs then brought this action contending the assessors consideration of "existing use" was insufficient, and alleged that "the entire rural land digest remains void and illegal for failure of the Defendants to lawfully assess such rural land solely according to its present zoning, existing uses, and other restrictions."

The trial court found that the assessors properly took "existing

use" of the rural lands into account in the revaluation of such land and the tax digests for 1977 and subsequent years was valid. The plaintiffs appeal. *Held*:

## Main Appeal (67573)

1. The trial court did not err in holding that "existing use" was but one factor to consider in arriving at "fair market value," and "although a fair market value determination may not be tilted 'in favor of an assumed "highest and best use"' (*Dotson*, 155 Ga. App. at 599), highest and best use is a factor that may be considered under the fourth criterion set out in the statute provided that it reflects the amount that would be realized from a cash sale of the property, not a forced sale, i.e., willing buyer/willing seller."

In 1977, under Code Ann. § 92-5701 (now included in OCGA § 48-5-1), property was required to be returned "at its fair market value." "Fair market value" was defined as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arms length, bona fide sale." OCGA § 48-5-2 (1) (formerly Code Ann. § 91A-1001). In assessing the fair market value of real property tax assessors must consider four criteria: "(i) Existing zoning of property; (ii) Existing use of property; (iii) Existing covenants or restrictions in deed dedicating the property to a particular use; and (iv) Any other factors deemed pertinent in arriving at fair market value." Id.

In essence, owners of rural land would like to have the "existing use" criterion the most heavily weighted factor of the four criteria used in establishing "fair market value." However, we have no difficulty in deciding that the "existing use" factor is not the sole criterion. *Chilivis v. Backus*, 236 Ga. 88, 91 (222 SE2d 371). Thus, while "existing use" is but one of four factors assessors must consider, the speculative factor which is represented by the "highest and best use" for real property is "a factor only if it would reflect the amount that would be realized from a cash sale of the property." Id. Accordingly, we find that, where appropriate, assessors may consider the "highest and best use" of real property under the fourth criterion of the statute when assessing the "fair market value." See *Dotson v. Henry County Bd. of Tax Assessors*, 155 Ga. App. 557, 559 (271 SE2d 691); *Stoddard v. Bd. of Tax Assessors*, 163 Ga. App. 499, 500 (295 SE2d 170).

2. Plaintiffs contend the trial court erred in holding that the tax assessors had taken into account "existing use in valuation of rural lands" when it was without any "actual comparable agricultural sales" in reassessing rural lands and that they admittedly made only an "arbitrary" reduction of only 10% in the 1,860 rural land parcels.

The assessors could find few sales of rural land for agricultural

purposes in Cobb County so they went to four surrounding counties and sought prices for sales of rural land. The Chief Assessor was asked: "As to those four counties you went to, you did not attempt in any of those four counties to limit yourselves to finding sales for continued rural uses, did you? A. No, sir. We couldn't. We didn't." They threw out the sales from Douglas County because they thought the sale prices were too high. However, it was admitted that those same four counties are also suffering from the same urban development problems as Cobb County. Included within these figures was the sale of land in Paulding County to the City of Atlanta for an airport site in which the average sale of land was $10,000 per acre. After consideration of the sales data from the surrounding counties the tax assessors reduced Cobb County evaluations on rural lands by an average of 10%.

In the instant case, the trial court, in its 1979 order, found that Plaintiff Sibley was the owner of timberland which he had purchased in the 1930's as part of a timber preserve. Plaintiff Hill owns 35 acres, mostly in pasture, on which he has lived for 65 years and on which he farms — raising cows, pigs, fruits and vegetables, which contribute to his livelihood. Plaintiff Hyde owns 127 acres, which are predominantly forest and crop lands and river bottom and from which they earn their living. They have lived on the land for 59 years. Plaintiff McAfee owns approximately 25 acres, mostly in pasture, on which she has lived for 32 years and made her living by farming. Plaintiff Power owns 80 acres of timber land which have been owned by his family since 1840. The court found that "[n]one of these taxpayers want to sell their property."

Thus, at issue is valuation of rural land in an urban setting where virtually no rural land is sold for agricultural purposes, but for industrial, commercial, or housing developments. Such sales reflect the speculative value of the land — or its highest and best use. However, the "existing use" in some cases — particularly where it is agricultural, represents low income land when compared to tax assessments. Whereas timberland and cattle grazing land may not produce $1 in income in any given year, or where drought, sub-freezing temperatures, or other types of severe weather can cause the farmer to suffer a loss for any given year, or series of years — if the tax assessor gives significant weight to the "highest and best use" factor of these rural lands in an urban setting, i.e., shopping center, office complex, or housing complex, the resulting higher assessment and taxation would be grossly disproportionate to income derived from the existing agricultural use. The end effect is either a forced sale of the land if the owner desires to pursue his chosen livelihood, or confiscation through taxation. Taxation amounting to confiscation exceeds legitimate taxing authority. See generally 84 CJS 46, Taxation, § 4.

It is apparent that an owner's freedom of choice of vocation and location is easily circumscribed by a tax assessor's evaluation of his land. If the assessment is so disproportionate to the income derived from the land the move or sale must logically follow. This is a difficult choice for an owner who has inherited his land from his parents or grandparents, or who has chosen this particular location because of nearness to friends or loved ones. In the instant case three of the plaintiffs have lived on their land for 32, 59, and 65 years respectively.

We find two errors which require reversal of the trial court's order. One — the tax assessors considered prices for sales of rural land in surrounding counties which did not exclude sales for "special" or "speculative" purposes, but to the contrary the assessors admitted that the surrounding counties suffered from the same urbanization problems as Cobb County, and the assessors were unable to find out whether those sales suffered from the same infirmities as those condemned in *Cobb County Bd. of Tax Assessors v. Sibley,* 244 Ga. 404, supra; i.e., the assessors relied upon sales which were for special purposes (Atlanta airport), and they were unaware whether the sales were for purposes which included a speculative factor of "highest and best use."

The second error is that a careful reading of all of the testimony convinces us that the Board of Tax Assessors continues to give too much weight to the "highest and best use" factor and insufficient weight to the "existing use" factor in arriving at the "fair market value" of plaintiff's lands. We agree that the assessors did take into consideration the "existing use" of these lands, but we also find that the weight accorded "existing use" was so disproportionate to the weight accorded "highest and best use" as to improperly elevate the assessment for taxation purposes. The 10% reduction reached by assessors in the last revaluation is miniscule when compared to the continuing percentage of increase in the most recent valuation of plaintiff's lands over the 1976 valuation, i.e., Hyde — 495%; Power — 388%; McAfee — 1,070%; Sibley — 449%; McLain — 1,282%.

We hold: (1) as we did in *Dotson v. Henry County Bd. of Tax Assessors,* 155 Ga. App. 557, supra, that the trial court erred in approving a valuation of rural lands which did not give sufficient weight to the "existing [agricultural] use" criterion of fair market value, and (2) the tax assessors used comparable sales in assessing valuation of Cobb County rural land which was sold for "special" purposes, and which the board could not assure the court had not been made for a speculative purpose, i.e., its highest and best use.

3. Our holding above renders moot the remaining enumerations of error.

*Cross Appeal* (67574)

4. The Cobb County Board of Tax Assessors appeal from the May 12, 1983 order of the trial court which amended its April 29, 1983 order by providing: "It is hereby ordered and decreed that no interest or penalties will be assessed on any of the subject parcels upon which taxes are paid on or before June 28, 1983, or regarding which an appeal has been filed on or before June 28, 1983. Taxes paid after that date in cases that have not been appealed will accrue interest and penalties as provided by law for tax arrearages."

The tax assessors contend this order contravenes the provisions of OCGA § 48-5-29 (d). We agree and reverse. Under OCGA § 48-5-29 (a), a superior court is granted jurisdiction to entertain an appeal from an aggrieved taxpayer concerning liability for ad valorem property taxes only when "the taxpayer shall pay the amount of ad valorem property tax assessed against the property at issue for the last year for which taxes were finally determined to be due on the property." Subsection (d) provides that any payment made by the taxpayer which is in excess of the finally determined tax liability shall be refunded. But, "[i]f the amount finally determined to be the tax liability of the taxpayer exceeds the amount paid under this Code section, the taxpayer shall be liable for the amount of the difference between the amount of tax paid and the amount of tax owed. *The amount of the difference shall be subject to the same penalty and interest as any other unpaid ad valorem tax.*" (Emphasis supplied.) The order of the trial court must be reversed.

*Judgments reversed in 67573 and 67574. Birdsong and Carley, JJ., concur.*

Decided April 3, 1984 —
Rehearing denied May 23, 1984 — ▉▉▉▉▉▉▉▉

*G. Conley Ingram, Franklin R. Nix*, for appellants.
*Charles A. Evans*, for appellees.