A94A0373. HARRINGTON et al. v. BALDWIN COUNTY BOARD OF TAX ASSESSORS.
(447 SE2d 300)

POPE, Chief Judge.

In 1990 the State Revenue Commissioner ("Revenue Commissioner") disapproved the 1990 tax digest for Baldwin County, Georgia ("County") and, while allowing the digest to be used for the collection of taxes for that year, ordered the Baldwin County Board of Tax Assessors ("Board of Tax Assessors") to correct the deficiencies which contributed to the lack of uniformity and equalization in the property valuations by the following year. In 1991, the Revenue Commissioner disapproved the tax digest submitted for approval for that year, based on a finding that some of the deficiencies noted in the 1990 order had not been corrected, and that the degree of uniformity and

equalization required by law had not been obtained. The Revenue Commissioner ordered the Board of Tax Assessors to correct the deficiencies before collecting any taxes based on the 1991 tax digest. Additionally, the Revenue Commissioner assessed a penalty of $4,428.94 against the County for failure to take the corrective action required by the 1990 order.

On September 19, 1991, relying on OCGA § 48-5-310, a superior court judge entered an order allowing the "immediate, temporary collection of taxes for 1991 in the same manner as if the 1991 tax digest had been approved. . . ." On February 3, 1992, an amended order was entered, which allowed the County to re-bill "agricultural class" property owners following the Revenue Commissioner's approval of the 1991 tax digest.

Pursuant to the Revenue Commissioner's order, the Board of Tax Assessors reappraised certain rural property in the County, and subsequently mailed notices of higher assessments for the 1991 tax year to owners of rural property of more than 25 acres, including appellants/plaintiffs ("taxpayers"). The taxpayers appealed the reassessment of their 1991 taxes and the assessment of their 1992 taxes based on the revaluation of their rural land, first to the Baldwin County Board of Equalization, and following an affirmance of the reassessments by the Equalization Board, to the Baldwin County Superior Court. The superior court consolidated and denied the taxpayers' appeals, and they appeal from that judgment.

1. Relying on *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723 (368 SE2d 326) (1988), the taxpayers argue that the Board of Tax Assessors had no authority to reassess their property after they paid their 1991 taxes based on the initial assessment. The Board of Tax Assessors argues *Fayette County* is distinguishable, because that case did not involve the immediate and temporary collection of taxes pursuant to an order of the superior court following the disapproval of a county's tax digest, as authorized by OCGA § 48-5-310. The Board further argues that the use of the word temporary in this section evinces the legislative intent that a "final" tax collection take place after any reassessment necessitated by the disapproval of the tax digest is completed.

We agree with the Board of Tax Assessors that OCGA § 48-5-310 authorizes the "temporary" collection of ad valorem taxes pursuant to an order of the superior court and that additional taxes may be collected, or refunds issued, following any revaluations and reassessments necessitated by the State Revenue Commissioner's disapproval of the digest. Subsection (g) of OCGA § 48-5-310 provides that "[c]ollection or payment of such taxes after the entry of an order by the court as provided in this Code section shall not in any manner affect or limit anyone who pays taxes from receiving and enjoying the

full benefits of any adjustments, benefits, refunds, *or additional assessments determined by the final disposition of the validity of the tax digest.*" (Emphasis supplied.) In this case the superior court's initial order provided for the "immediate, temporary collection of taxes for 1991 in the same manner as if the 1991 tax digest had been approved by the Revenue Commissioner, all *subject to the provisions of [OCGA § 48-5-310].*" As stated supra, the provisions of OCGA § 48-5-310, and in particular subsection (g), provide for additional assessments following reappraisal. It follows that the collection of additional taxes in this case was not unauthorized, as the taxpayers contend. Moreover, because we hold that the additional assessments were authorized by the superior court's initial order and the provisions of OCGA § 48-5-310, it is unnecessary for us to determine whether the additional assessments were also authorized by the court's subsequent order which specifically provided that the taxpayers could be rebilled following approval of the revaluations by the Revenue Commissioner. We do note, however, that OCGA § 48-5-310 (h) provides that the superior court "retain[s] jurisdiction to issue any appropriate order necessary to enforce the court's order allowing the temporary collection of taxes."

2. Contrary to the taxpayers' remaining arguments on appeal, the Board of Tax Assessors has the authority to place property in homogeneous groups for the purpose of determining its value in relation to other and like property, and different valuation methods may be utilized. See OCGA § 48-5-341 (7); *Fulton County v. Strickland,* 251 Ga. 473 (2 & 3) (306 SE2d 299) (1983); cf. *Cobb County Bd. of Tax Assessors v. Sibley,* 244 Ga. 404 (260 SE2d 313) (1979); *Sibley v. Cobb County Bd. of Tax Assessors,* 171 Ga. App. 65 (318 SE2d 643) (1984). The Georgia Constitution mandates the uniform taxation of real property and that both real and intangible property, with certain specific exceptions, be taxed at the same rate. Ga. Const., Art. VII, Sec. I, Par. III; *Benson-Corwin, Inc. v. Cobb County School Dist.,* 239 Ga. 199 (236 SE2d 361) (1977). However, property may be valued by different methods. *Dougherty County Bd. of Tax Assessors v. Burt Realty Co.,* 250 Ga. 467 (298 SE2d 475) (1983).

" 'The object of the assessors must be to determine the fair market value of the property subject to taxation in the county and the methods employed may be varied if the object is attained.' [Cit.] While '(t)he tax assessor must use the same standard (i.e., fair market value) or system (i.e., 40% of fair market value) in determining and fixing the taxable value of all property of the same class . . .' [cit.], it is not '(im)permissible under the uniformity of taxation provision of the constitution to apply different methods of arriving at the fair market value of tangible property. [Cit.]' [Cit.] It is the duty of the board of tax assessors to 'see that all taxable property within the

county is assessed and returned at its fair market value and that fair market values as between individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as near as may be only his proportionate share of taxes.' [Emphasis deleted.] [OCGA § 48-5-306 (a).] 'This does not require the tax assessors to use any definite system or method, but demands only that the valuations be just and that they be fairly and justly equalized among the individual taxpayers. . . ." *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981). Likewise, the Board's revaluation and reassessment of only rural real estate of 25 acres or more did not constitute an impermissible spot or piecemeal reappraisal, cf. *Thorpe v. Benham*, 161 Ga. App. 116 (1) (289 SE2d 275) (1982), but was necessitated by the Commissioner's order to achieve the degree of uniformity and equalization mandated by law.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED MAY 11, 1994 —
RECONSIDERATION DENIED JULY 28, 1994 — 

*G. L. Dickens, Jr., H. Don Harper*, for appellants.
*Gardner & Gardner, Milton F. Gardner, Jr.*, for appellee.