A95A2394. INLAND CONTAINER CORPORATION et al.
v. PAULDING COUNTY BOARD OF TAX ASSESSORS.
(470 SE2d 702)

SMITH, Judge.

Appellants Inland Container Corporation and the Jones Company together own approximately 30,000 acres of timberland in Paulding County. This case is an appeal arising out of valuation of appellants' land for ad valorem tax purposes.

In compliance with an order from the revenue commissioner to correct deficiencies in the valuation of large tract properties within Paulding County's tax digest, appellee Paulding County Board of Tax Assessors (Paulding County) contracted with Tri-State Mapping and Appraisal Service to conduct a mass reappraisal of approximately 1,500 large acreage rural parcels for the 1992 tax year. Tri-State developed a pricing schedule used to value large acreage tracts, including appellants' properties, in Paulding County for tax years 1992-1995. The schedule applied to tracts that were for residential, agricul-

tural, and timber uses. Tri-State developed the schedule by investigating a list of 50 sales of large tract rural property to determine whether any could be used as comparable sales for reappraisal purposes. From this list, Tri-State chose 20 sales for use in determining fair market value of large tract rural parcels in Paulding County. The per-acre values of the transactions were used as a guide in the division of the county into four regions. Factors such as location and access were considered in categorizing the land and assigning values. Of the twenty sales, five tracts were later developed into subdivisions, but at the time of the appraisal, the tracts had not been developed. One other tract was purchased by a development company for eventual subdivision. Of the remaining 14 tracts, the chief appraiser for Paulding County testified that the use of the properties at the time of sale continued after the sale. Although seven of the remaining tracts were used for home construction, the chief appraiser opined that construction of a home on a large acre tract does not prevent the continued use of the property for timberland or other agricultural production. When the mass reappraisal was completed in 1992, it was approved by the Department of Revenue for uniformity and equalization.

The reappraisal caused a sharp increase in appellants' tax assessments. They appealed the assessment of 13,000 acres in 69 separate parcels to the Superior Court of Paulding County. The trial court, sitting as finder of fact, found that "the average assessed value of appellants' property at issue increased from $767 per acre (including timber) in 1991 to $1,112 per acre (excluding timber) in 1992" but affirmed the tax assessment. On appeal, appellants primarily contend the trial court and the tax assessor erroneously failed to consider "existing use" in connection with the assessment of their land.

1. We agree with the trial court that determining the fair market value of property "is difficult enough; otherwise, there would be no need for real estate agents or brokers, and everyone would know the value of their real property as easily as looking up a stock exchange quote. Now, as far as taxation is concerned, real estate value has been further complicated by 'considering' the four criteria in OCGA § 48-5-2 (3) (B)." Under that statute, the tax assessor must consider, inter alia, the existing use of property and "[a]ny other factors deemed pertinent in arriving at fair market value." OCGA § 48-5-2 (3) (B) (ii) and (iv).

Appellants contend the trial court failed to consider the present value or existing use of their timberland. We disagree. As noted by the trial court and in *Dotson v. Henry County Bd. of Tax Assessors*, 155 Ga. App. 557, 559 (271 SE2d 691) (1980), "existing use" must be employed as a "yardstick" with which to measure fair market value. Here, unlike *Dotson*, some evidence exists that existing use *was* con-

sidered in arriving at fair market value. The trial court found that "[e]xisting use was considered [by the tax assessor] although apparently not given as much weight as appellants think it deserves" and also that "existing use appears to be built into appellees' land value tables."

The record supports these findings. The vice president of Tri-State testified that the valuation performed in Paulding County was based on both existing use and highest and best use. Although he stated that his determination of fair market value was based on highest and best use, he agreed that existing use was taken into account in "classing the use of the property being appraised." Further, the large tract pricing schedule developed by Tri-State and used in assessing ad valorem taxes reflects a consideration of existing use. The land on each tract was categorized into seven separate use divisions: crop land; pasture land; woodland; pond; mined; orchard; and easement. The "land valuation analysis" prepared by Tri-State also recited that existing use was a factor used in classifying the property for valuation. The schedules developed by Tri-State addressed location, access, and property type, including seven kinds of access and twenty-two types of property use. This constituted some evidence that existing use was considered in valuation of appellants' property.

We do not agree with appellants that reversal is required under *Sibley v. Cobb County Bd. of Tax Assessors*, 171 Ga. App. 65 (318 SE2d 643) (1984). This case is indeed similar to *Sibley*, as both cases involve valuation of rural land where agricultural (or timber) sales were rare. In *Sibley*, the tax assessors erroneously considered, as comparable sales, prices for sales of rural land "which did not exclude sales for 'special' or 'speculative' purposes." Id. at 69. The *only* evidence of purported "comparable sales" was evidence of sales "for industrial, commercial, or housing developments . . . [which] reflect the speculative value of the land — or its highest and best use." Id. at 68. See *Hawkins v. Grady County Bd. of Tax Assessors*, 180 Ga. App. 834 (350 SE2d 790) (1986).

Here, some evidence was presented that the use of 14 out of the 20 tracts continued after the sale and that the sales therefore were not all for speculative purposes. The vice president of Tri-State testified that he believed all 20 sales to be comparable. Appellants complain about the construction of residences on seven of those tracts and assert that the remaining sales contain "serious defects." They contend at least five did not meet the accepted definition of a comparable sale: an arm's length transaction between unrelated parties, free of duress, for fair market value. They point out that two sales were between family members and claim that one was a transfer under duress. Another was acquired for nearly twice its market value by a landowner desperate to purchase the land from obnoxious neighbors,

and another was a sale for approximately 25 percent of fair market value to the State of Georgia for a wildlife management area. That these sales were not timberland sales is not fatal to Paulding County's assessment; no requirement in Georgia law demands that comparable sales be identical. See *Hawkins v. Grady County Bd. of Tax Assessors*, supra at 835.

Further, appellants complain of the trial court's conclusion that the subdivisions and houses "were actually developed within a relative [sic] short period of time after sale and do not appear to be the highly speculative or long term investment properties so criticized by the appellate courts in the 1970's." Although appellants take issue with the trial court's definition of "speculative," we cannot say as a matter of law that all these sales fell into the categories of sales condemned in *Sibley* — commercial, industrial, or housing developments. The trial court sits as a finder of fact, and we judge only the sufficiency of the evidence, not its weight. See *Hawkins v. Grady County Bd. of Tax Assessors*, 192 Ga. App. 416, 417 (2) (385 SE2d 305) (1989). Nor may we accept or reject any opposing methods of appraisal presented at trial. Id. Here, some evidence was presented that at least 14 sales used as comparable sales to assess appellants' land were sales of large acreage lots, not used for commercial, industrial, or housing development purposes. Because some evidence exists that existing use was considered in classifying the properties and some evidence exists that "comparable sales" were used to assess the value of appellants' land, the evidence did not demand a finding that the assessors "did not consider use of the property in question or the property of all others similarly situated." *Ayers v. Douglas County Bd. of Tax Assessors*, 162 Ga. App. 224, 225 (2), 226 (291 SE2d 84) (1982).

Moreover, although appellants complain about the value attributed to their land, they presented no evidence of fair market value. As the trial court aptly observed, "Appellants' expert witness . . . a forestry consultant and timberland appraiser, did not attempt to determine fair market value. As he puts it, Paulding County is a tough market to value because it is a thin market. There have basically been no sales of timberland to anyone other than developers. He only attempted to determine its existing use value as timberland which in his opinion is $400.00 per acre. He would not compare the merits of existing use to highest and best use merely stating that it should be heavily weighted toward existing use." The trial court found, and we agree, that appellants had the burden to establish fair market value. See *Stoddard v. Bd. of Tax Assessors of Grady County*, 163 Ga. App. 499, 500 (295 SE2d 170) (1982). Because appellants failed to meet this burden and because some evidence exists that existing use was considered in assessing appellants' land, we affirm the rulings of the trial court.

2. Appellants also complain about the trial court's findings that the taxpayer's burden is to prove the value of his property and that "[i]t is not sufficient to simply show that the methodology used by the tax assessors may be flawed." While they agree that the taxpayer must prove fair market value, they argue that value and methodology are separate issues and a taxpayer need not prove value in order to prove that a tax assessor's methodology is improper. To the extent that the ruling implies that a taxpayer cannot raise methodology on appeal from the assessment, we agree. OCGA § 48-5-311 (e) (1) provides that a taxpayer may appeal from an assessment "as to matters of taxability, uniformity of assessment, and value." We do not agree, however, that this finding, even if arguably erroneous, is ground for reversal. The "methodology" about which appellants complain is the alleged failure to consider existing use in the valuation of their properties. As held in Division 1, however, the record supports the trial court's ruling that existing use was factored into the valuation of appellants' properties. We find no merit in this contention.

3. Appellants contend the trial court erroneously found that the passage of the Paulding County Tax Digest each year since the reassessment "would indicate that the reassessments were at fair market value." Paulding County acknowledges, and we agree, that acceptance by the Department of Revenue of the tax digest might not "be a ringing endorsement of the values derived therefrom." However, this statement by the trial court appears to have been merely a passing comment, not a finding on which it based its opinion. The court's affirmance of the assessments was based on its finding that existing use was considered in valuation. This finding, as held in Division 1, was supported by the record. Therefore, error in this statement, if any, was harmless. A judgment right for any reason will be affirmed. See, e.g., *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991). Sufficient other evidence supports the trial court's holding, and we find no merit in this contention.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MARCH 12, 1996 —
RECONSIDERATION DENIED MARCH 28, 1996 — 

*Shaw, Maddox, Graham, Monk & Boling, Daniel M. Roper*, for appellants.

*Vinson, Talley, Richardson & Cable, J. Glenn Richardson, Michael R. Wing*, for appellee.