FAY, Circuit Judge,
concurring in part and dissenting in part:
As set forth in the majority opinion, the Railroad raises three issues in this appeal. The majority rejects all three of the Railroad’s contentions. I agree that issues two and three have no merit. The district court did not err in finding Tegarden’s appraisal was not based upon the same methodology as that used by the Board nor in accepting the 6.3 percent terminal growth rate used by the Board in its discounted cash flow evaluation.
Most respectfully, however, I disagree with the majority’s holding that the 4-R Act bars the Railroad from challenging the valuation methodology chosen by the state. As acknowledged by the majority, our sister circuits have split on this issue. This gives me a little concern because in my opinion there is nothing ambiguous or complicated about these statutes.
Congress passed the Tax Injunction Act, 28 U.S.C. § 1341, which federal courts have enforced with great zeal. Congress, just as clearly, enacted the Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act), 49 U.S.C. § 11501, to correct a perceived evil; to wit: discriminatory tax practices by the states upon our national rail transportation system. The 4-R Act is a specific exception and excluded from the provisions of the Tax Injunction Act. 49 U.S.C. § 11501(c).
The language of the statute is straightforward and prohibits states from assessing rail transportation property at a value that has a higher ratio to the true market value than the ratio that the assessed value of other commercial and industrial property has to its true market value. If *1293 such a variation exists and exceeds five percent, relief may be granted to the railroad.
The only reference dealing with how such may be shown is a sentence that specifies that “the burden of proof in determining assessed value and true market value is governed by State law.” 49 U.S.C. § 11501(c). It is apparent from the record in this case that there are many methodologies that can be used in assessing the value of property. No one has suggested that Georgia law approves of some and disapproves of others.[1] Surely a state could not use one method to assess the market value of railroad property and a different method to assess other commercial and industrial property if such resulted in gross discrimination toward the railroad.
As articulated by the Second Circuit, such a situation would be in direct conflict with the clear meaning of the statute:
4. Method of Appraisal
[6] Relying primarily on a decision by the fourth circuit in Chesapeake Western Ry. v. Forst, 938 F.2d 528 (4th Cir.1991), the SBEA contends that Conrail is bound by the method of appraisal that the SBEA has chosen, and that since it chose to use the cost approach, it is improper to consider any other method of valuation in fixing the “true market value” of Conrail’s properties. The Chesapeake court viewed the method of appraisal as a matter of state policy that was beyond the reach of the 4-R Act. We do not accept that interpretation of the statute. What the 4-R Act prohibits is discrimination against railroads in the ratios of two sets of numbers: assessed *1294 values and true market values of the railroad’s property vis a vis those of other commercial and industrial properties. To avoid the prohibited discrimination, the SBEA must apply the same valuation standards and methods to the railroad property as are used on the commercial and industrial properties to which it is compared. If the Act were to be interpreted, as defendants would have it, so that the SBEA could adopt a special appraisal method for railroads alone, then the whole nondiscrimination objective of the statute could be circumvented.
Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 481-82 (2nd Cir.1995).
Since the objective of any methodology is a determination of true market value, a railroad should be allowed to challenge the method used in an attempt to prove that the result of such a method was not the true market value of its property. In sum, I agree with Justice Stevens that “the text of (the statute) ... and its evident purposes convince me that Congress intended to bar discrimination by any means ...” ACF Industries, 510 U.S. at 350, 114 S.Ct. at 853 (Stevens, J., dissenting). If the Railroad can prove that the method used by the state does not result in a fair appraisal of true market value and that the assessed value is in fact at a ratio higher than five percent of the ratio of true market value and assessed value of other commercial and industrial property, it is entitled to relief.
Having said all of this, I have no idea whether in this case the Railroad can meet its burden of proof. Although the district court found the Railroad’s expert well qualified, other comments raise serious concerns about the weight that would have been given to the opinions expressed. I simply disagree with the absolute preclusion of any challenge to the methodology used by the state in arriving at the true market value of the Railroad’s property.

. A quick glance at some Georgia cases shows that the method of appraising value is often in dispute. See Rogers v. De Kalb County Bd. of Tax Assessors, 247 Ga. 726, 279 S.E.2d 223 (Ga.1981), where the plaintiff sought an injunction prohibiting the Board of Tax Assessors from using the published market (i.e., "blue book”) value to assess his aircraft and requiring them to value and assess the aircraft on the basis of original cost minus depreciation, the method more commonly employed to value business equipment, furniture and fixtures. The plaintiff argued that aircraft represented tangible property just as business equipment, furniture and fixtures did, and that Georgia law required uniform taxation of property within the same class. The Georgia Supreme Court held that: "it is not '[imjpermissible under the uniformity of taxation provision of the constitution to apply different methods of arriving at the fair market value of tangible property.' "Id. at 728, 279 S.E.2d 223, (citing Wade v. Ray, 234 Ga. 234 (214 S.E.2d 923) (1975)). See also Chilivis v. Backus, 236 Ga. 88, 90 (222 S.E.2d 371) (1976), where the Supreme Court of Georgia reviewed a lower court ruling that prohibited the county tax assessor from considering any factor other than actual use in arriving at fair market value. Holding that actual use is a determinative, but not exclusive, factor for determining a property's fair market value, the Court observed that: "[t]he object of the assessors must be to determine the fair market value of the property subject to taxation in the county and the methods employed may be varied if the object is attained.” See also Colvard v. Ridley, 218 Ga. 490, 128 S.E.2d 732 (1962), where the taxpayer alleged that the tax assessors had taxed their real and personal property according to different methods, violating the state mandate for uniform taxation within a given class of property. The Supreme Court of Georgia held that: "[wjhile tax assessors were permitted a wide range of tools of placing a value on property, they were required to use the same valuation tool when placing a value on property within one class." Id. at 491, 128 S.E.2d 732. Finally, see Inland Container Corp. v. Paulding County Bd. of Tax Assessors, 220 Ga.App. 878, 470 S.E.2d 702 (Ga.Ct.App.1996), where two corporate landowners challenged their property tax assessments, arguing that the assessors should have considered "existing use” of the property. Noting that it could only judge the sufficiency of the evidence, not its weight, the Géorgia Court of Appeals cautioned, “[n]or may we accept or reject any opposing methods of appraisal presented at trial.” Id. at 881, 470 S.E.2d 702.