**SECOND DIVISION
MILLER, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**February 15, 2022**

# In the Court of Appeals of Georgia

A21A1808. BAINBRIDGE LTD., L.P. v. DEKALB COUNTY TAX ASSESSORS.

MILLER, Presiding Judge.

In this dispute between Bainbridge Limited L.P. ("Bainbridge") and the DeKalb County Tax Assessors ("the County") concerning the amount of ad valorem tax of a rent-restricted apartment complex, Bainbridge appeals from the trial court's final order declaring the fair market value of the apartment complex for the 2018 tax year. On appeal, Bainbridge argues that (1) the County's witnesses failed to apply the negative impact of the restrictive covenants and higher operating costs of the apartment complex in its fair market value analysis; (2) the County's witnesses failed to make a deduction for economic obsolescence in its fair market value analysis; (3) the trial court erred by denying its motion in limine to exclude the testimony of one

of the County's witnesses; and (4) the trial court erred by denying its request for attorney fees under OCGA § 48-5-311. For the reasons that follow, we affirm in part, vacate in part, and remand this case for further proceedings.

"On appeal from a superior court [in a tax exemption dispute], this Court accepts the superior court's findings of fact unless clearly erroneous but applies a de novo standard of review to the court's application of the law to those facts as well as to its legal conclusions." (Citation omitted.) *Cherokee County Bd. of Tax Assessors v. Mason*, 340 Ga. App. 889, 890 (798 SE2d 32) (2017).

The record shows that Bainbridge owns Granite Crossing Apartments ("Granite Crossing"), which is located in Lithonia, Georgia. The construction of Granite Crossing was partially financed with low-income housing tax credits ("LIHTC") awarded to it by the Georgia Housing and Finance Authority, and in exchange for the tax credits, 74 units at Granite Crossing were reserved for low-income tenants who pay rent below the market rates. Construction on Granite Crossing began in 2017 and was completed after January 1, 2018. Granite Crossing's assessment for the 2018 tax year was $11,801,800. Bainbridge appealed the assessment to a hearing officer, who determined that the property's fair market value was $10,707,500. Bainbridge then

2

appealed the hearing officer's decision to the DeKalb County Superior Court, and the superior court set the matter for a bench trial.

At trial, Calvin Hicks, the chief appraiser for DeKalb County, testified that he relies upon OCGA § 48-5-2 and various administrative rules in determining a property's fair market value. Specifically, he noted that Ga. Comp. R. & Regs. § 560-11-10-.09 required appraisers to consider various approaches when appraising real property, including the income approach and the cost approach, and he stated that the particular approach employed would depend on the availability of reliable data and the type of property being appraised. He explained that, for the income approach, an assessor would need properties with comparable market rents and expenses and that it may be "questionable" to use the income approach to assess a property if that information were not available. According to Hicks, the cost approach is the best approach to use to assess a low-income housing tax credit property because it is the only approach with the necessary available information to render an opinion of the property's value. As to the factors listed in OCGA § 48-5-2 which assessors use to assess a property, Hicks testified that he requires his assessors to consider each factor in the statute in determining which approach to use and whether each factor applies in assessing a property. As to Granite Crossing, Hicks testified that he did not believe

3

that the factors listed in OCGA § 48-5-2 (3) (B) (vi), rent limitations and higher operating costs, applied when using the cost approach. He also testified that rent restrictions and higher operating costs would not constitute economic obsolescence because the arrangement regarding restricted rent is a matter of contract and is within the owner's control.

Geoffrey Johnson,[1] the commercial appraiser supervisor for the DeKalb County Tax Assessor's Office, conducted an appraisal of Granite Crossing using the cost approach. According to Johnson, most of the reliable data supported the use of the cost approach to determine Granite Crossing's fair market value. Regarding the factors listed in OCGA § 48-5-2, Johnson testified that he considered each criteria to determine if each was relevant in determining the fair market value and that not all of the factors were relevant. Specifically, he considered rent limitations and higher operating costs resulting from regulatory requirements imposed on the property, and he determined that these two factors were not relevant in assessing Granite Crossing's fair market value because there was no line item for using those factors under the cost approach. Johnson described economic obsolescence as negative influences on a

---

[1] Prior to trial, Bainbridge moved to exclude Johnson's testimony, which the trial court denied.

4

property that are external to the property and beyond the control of the property owner. Johnson testified that rent restrictions and higher operating costs for low income housing tax credit properties do not constitute economic obsolescence under the cost approach because those factors are not external to a decision made by the parties or the property owner, and in this case, Bainbridge received something in return for its agreement to reduce the rental rates which was why he did not have a line item for economic obsolescence. In Johnson's opinion, Granite Crossing's fair market value was $14,226,785. Johnson testified that he did not use the income approach because Granite Crossing was still under construction as of January 1, 2018, and that the income approach is not the best approach to use for a property still under construction because there is very little reliable data available to develop an accurate valuation of the property.

Bainbridge presented testimony from Glen Bamberger, the chief financial officer for Wendover Housing, who prepared the application for Bainbridge's funding in 2015. Bamberger acknowledged that Granite Crossing was not issued a certificate of occupancy until February 1, 2018. Bamberger testified that, in his opinion, Granite Crossing's fair market value was $1,000,000 under the income approach.

Bainbridge also presented testimony from Brian Walsh, an employee of the VSI Appraisal Group in Ohio, who testified that Granite Crossing's stabilized fair market value as of Jan. 1, 2018 was $3,700,000. He testified that the cost approach is unreliable for low-income housing tax properties because "the market rent to develop a property new does not meet the cost to develop that property," and that the income approach was the better approach to use to determine the fair market value.

Following the trial, the trial court entered an order declaring Granite Crossing's fair market value for the 2018 tax year to be $14,226,785.00 under the cost approach. Specifically, the trial court concluded that the cost approach was the appropriate method for determining the property's fair market value because its data was more reliable and because the property was still under construction as of January 1, 2018. Additionally, the trial court also denied Bainbridge's motion in limine to exclude Geoffrey Johnson's testimony after concluding that the testimony was based upon reliable methods, and it also denied Bainbridge's motion for attorney fees under OCGA § 48-5-311. This appeal followed.

1. First, Bainbridge argues that the County's witnesses failed to apply the negative impact of the restrictive covenants and higher operating costs of the apartment complex in determining Granite Crossing's fair market value. We agree

that the trial court erred by concluding that the County's witnesses were not required to account for the restrictive covenants and higher operating costs in determining the fair market value under OCGA § 48-5-2 (3) (B).

All property must be returned for taxation at its fair market value. OCGA § 48-5-6. A county's appraisers are required to "base their decisions regarding the taxability, uniform assessment, and valuation of real property on the circumstances of such property on January 1 of the tax year for which the assessment is being prepared." Ga. Comp. R. & Regs. § 560-11-10-.09 (1) (b) (2); see also OCGA § 48-5-10 ("Each return by a taxpayer shall be for property held and subject to taxation on January 1 next preceding each return."). "The essence of this duty is to see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes." (Citation omitted.) *SJN Properties, LLC v. Fulton County Bd. of Assessors*, 296 Ga. 793, 800 (2) (b) (ii) (770 SE2d 832) (2015).

To determine whether the County was required to account for the impact of the restrictive covenants and the higher operating costs in determining Granite Crossing's fair market value, we are required to construe OCGA § 48-5-2. OCGA § 48-5-2 (3)

7

defines "fair market value" as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale[,]" and it provides a list of factors that tax assessors "*shall apply*" in determining fair market value. These include (1) "Existing zoning of property," (2) "[e]xisting use of property"; (3) "[e]xisting covenants or restrictions in deed dedicating the property to a particular use"; (4) "[r]ent limitations, higher operating costs resulting from regulatory requirements imposed on the property, and any other restrictions imposed upon the property in connection with the property being eligible for any income tax credits with respect to real property which are claimed and granted pursuant to either Section 42 of the Internal Revenue Code of 1986"; and (5) "[a]ny other existing factors provided by law or by rule and regulation of the commissioner deemed pertinent in arriving at fair market value." OCGA § 48-5-2 (3) (B) (i), (ii), (iii), (vi), (viii). Thus, the plain language of this provision indicates that the tax assessors were required to adjust the fair market value for the restrictive covenants and higher operating costs, because there is nothing in the statute to suggest that the legislature intended the use of the word "shall" to denote a permissive rather than a mandatory meaning. See *Moosa Co., LLC v. Commr. of Ga. Dept. of Revenue*, 353 Ga. App. 429, 430 (838 SE2d 108) (2020) ("When we consider the meaning of a

statute, we must presume that the General Assembly meant what it said and said what it meant.") (citation omitted). See also *TermNet Merchant Svcs., Inc. v. Phillips*, 277 Ga. 342, 344 (1) (588 SE2d 745) (2003) (stating that "[i]n its ordinary signification, 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission[.]"). This construction of OCGA § 48-5-2 (3) (B) is further supported by an examination of the history of this provision. In the prior version of this statute, tax assessors were merely required to *consider* covenants, restrictions, and the use of the property in determining the fair market value. See OCGA § 48-5-2 (3) (B) (i) (ii) (iii), (vi) (2010) ("The tax assessor shall consider the following criteria in determining the fair market value of real property: Existing zoning of property; [e]xisting use of property, including any restrictions or limitations on the use of property resulting from state or federal law or rules or regulations adopted pursuant to the authority of state or federal law; [e]xisting covenants or restrictions in deed dedicating the property to a particular use; . . . [and] [a]ny other existing factors deemed pertinent in arriving at fair market value."). The legislature then revised OCGA § 48-5-2 (3) (B) to state that tax assessors "shall apply" rent restrictions and higher operating costs in determining a property's fair market value. See *Heron Lake II Apartments, LP v. Lowndes County*

9

*Bd. of Tax Assessors*, 306 Ga. 816, 818 (1) (b) (833 SE2d 528) (2019) (hereinafter "*Heron Lake II*") (noting that the legislature's 2017 amendment of OCGA § 48-5-2 (3) (B) (vi) was written "to provide that in determining the fair market value of Section 42 properties, *tax assessors shall apply*, among other things, the following criterion: Rent limitations [and] higher operating costs resulting from regulatory requirements imposed on the property[.]") (emphasis supplied). Therefore, based on an examination of the statute, it is apparent that OCGA § 48-5-2 (3) (B) requires tax assessors to apply rent restrictions and higher operating costs in determining a property's fair market value.

Here, Hicks testified that he did not believe that the factors of rent limitations and higher operating costs applied when using the cost approach. The trial court, in accepting the County's valuation, determined that the law merely requires consideration of these factors.[2] Because the trial court determined that the County's witnesses were only required to consider, rather than actually apply, the factors listed in OCGA § 48-5-2 (3) (B) and relied upon the faulty valuation in declaring Granite

---

[2] To the extent that the trial court relied on our prior decision in *Inland Container Corp. v. Paulding County Bd. of Tax Assessors*, 220 Ga. App. 878 (470 SE2d 702) (1996) in support of its ruling in this case, that reliance was misguided. Our holding in that case was based on the prior version of the statute, which, as noted above, only required that the assessors consider the enumerated factors.

Crossing's fair market value for the 2018 tax year, this conclusion was a legal error, and the trial court's fair market valuation must be reversed on this basis.[3] See *Leverett v. Jasper County Bd. of Tax Assessors*, 233 Ga. App. 470, 471 (1) (504 SE2d 559) (1998) (holding that the trial court committed plain legal error by relying upon the tax assessor's fair market value determination that was conducted in violation of OCGA § 48-5-2 (3) (B)).[4]

2. Next, Bainbridge further argues that the trial court erred by denying its motion in limine to exclude Geoffrey Johnson from testifying at trial because Johnson failed to apply rent restrictions and higher operating costs when determining the fair market value of Granite Crossing, and his valuation was therefore unreliable. We conclude that the trial court did not err by admitting Johnson's testimony.

The denial of a motion in limine is reviewed for abuse of discretion. *Central Georgia Women's Health Center, LLC v. Dean*, 342 Ga. App. 127, 139 (2) (800 SE2d 594) (2017). OCGA § 24-7-702 (b) states:

---

[3] Although Bainbridge argues that the trial court erred by holding that OCGA § 48-5-2 (3) (B) only applies under the income approach, a review of the order does not reveal any such holding by the trial court.

[4] In light of this holding, it is unnecessary to address Bainbridge's claim as to whether these two factors should be applied in the context of economic obsolescence.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

In construing this provision, we have emphasized that "[a]n expert has great liberty in determining the basis of his opinions," and that "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility[.]" (Citations and punctuation omitted.) *Emory Univ. v. Willcox*, 355 Ga. App. 542, 545 (2) (844 SE2d 889) (2020).

Here, Johnson testified regarding his experience in conducting valuations for properties, the method that he used in assessing Granite Crossing, the source of the information he used to assess Granite Crossing, and the methodology he used to reach his ultimate conclusion regarding Granite Crossing's fair market value. As stated in

Division 1, Johnson did not adjust his fair market value determination to account for an application of Granite Crossing's rent limitations and higher operating costs. The fact that Johnson did not apply these two factors in his assessment, however, did not render his testimony inadmissible. Instead, the factual basis for Johnson's testimony went to the credibility of the testimony, which rests with the trial court, as the fact finder. See, e.g., *White Horse Partners LLLP v. Monroe County Bd. of Tax Assessors*, 348 Ga. App. 603, 606-607 (1) (824 SE2d 57) (2019) (holding that the trial court did not abuse its discretion by permitting a tax assessor to render expert testimony even though the tax assessor could not specifically recall the basis for his determination regarding the value of timber). Accordingly, Bainbridge has failed to show that the trial court abused its discretion by denying its motion in limine to exclude Johnson's testimony.

3. Lastly, Bainbridge argues that the trial court erred by denying its request for attorney fees under OCGA § 48-5-311. We disagree.

OCGA § 48-5-311 (g) (4) (B) (III) provides:

> If the taxpayer appeals to the superior court pursuant to this subsection and the final determination of value on appeal is 85 percent or less of the valuation set by the county board of equalization, hearing officer, or arbitrator as to any real property, the taxpayer, in addition to the interest

provided for in subsection (m) of this Code section, shall recover costs of litigation and reasonable attorney's fees incurred in the action. Any appeal of an award of attorney's fees by the county shall be specifically approved by the governing authority of the county.

Thus, the plain language of the statute authorizes an award of attorney fees only if the final determination of value on appeal is 85 percent or less of the valuation set by the county board of equalization, hearing officer, or arbitrator. Id.

Here, however, as noted by the County, Bainbridge moved to exclude all evidence pertaining to the Hearing Officer's valuation from being presented at trial, and the trial court granted the motion. Thus, as the trial court noted in its final order, no evidence of the Hearing Officer's valuation was presented to the court for its consideration. Because no evidence of the Hearing Officer's valuation was presented for the trial court to determine if its final determination was 85 percent or less than the Hearing Officer's valuation, Bainbridge failed to demonstrate that it was entitled to attorney fees under OCGA § 48-5-311.[5]

---

[5] To the extent that Bainbridge argues that it is entitled to attorney fees because the fair market valuation by one of its witnesses, Brian Walsh, was 85 percent or less than the Hearing Officer's valuation, this argument fails for the same reason.

14

Although Bainbridge argues that the Hearing Officer's valuation was inadmissible during the bench trial because the tax appeal to the superior court was a "de novo" proceeding and that the evidence from the prior proceeding was inadmissible before the superior court, this argument is entirely meritless. In a tax appeal before the superior court, we have been clear that "the whole record is brought up from the court below, and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case." (Citations omitted.) *Sph Glynn, LLC v. Glynn County Bd. of Tax Assessors*, 326 Ga. App. 196, 197-198 (1) (a) (756 SE2d 282) (2014). Thus, Bainbridge's contention that the Hearing Officer's valuation was inadmissible because it was part of the prior proceeding necessarily fails, and for the reasons stated above, the trial court did not err by denying Bainbridge's request for attorney fees.[6]

---

[6] We also reject Bainbridge's argument that the issue of attorney fees could only be addressed in a separate proceeding following the bench trial. There is nothing in the Supreme Court of Georgia's decision in *Hall County Bd. of Tax Assessors v. Westrec Properties, Inc.*, 303 Ga. 69 (809 SE2d 780) (2018), to indicate that a request for attorney fees under OCGA § 48-5-311 must be addressed in a separate proceeding after a trial, and thus Bainbridge's reliance on that case is greatly misguided.

15

Accordingly, for the reasons stated above, we affirm the portion of the trial court's final order denying Bainbridge's motion in limine and its motion for attorney fees. However, we vacate the portion of the trial court's order declaring Granite Crossing's fair market value and remand the case to allow the trial court to reconsider Granite Crossing's fair market value for the 2018 tax year.

*Judgment affirmed in part, vacated in part, and case remanded. Hodges and Pipkin, JJ., concur*.