**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**November 7, 2013**

# In the Court of Appeals of Georgia

A13A0981. TERRELL COUNTY BOARD OF TAX ASSESSORS v. GOOLSBY et al.

MᴄFADDEN, Judge.

The Terrell County Board of Tax Assessors ("the board") appeals the decision of the superior court that Jason and Brian Goolsby did not breach a conservation use covenant. As to the threshold issue of jurisdiction, we reject the Goolsbys' argument that the notice of appeal was untimely; the superior court properly extended the appeal deadline.

As to the merits, the board contends that the Goolsbys breached the covenant by operating a commercial grain business on the property, notwithstanding that the property otherwise qualified as a bona fide conservation use property. The superior court rejected the board's contention, holding that procuring or operating a business

on the subject property cannot constitute a breach of the covenant. In so holding the superior court erred. But if use of the property in a business is incidental, occasional, intermediate or temporary and not detrimental to or in conflict with its primary, qualifying use of the property, procuring or operating a business on otherwise qualified property is not a breach of the agreement and does not prevent the property from being classified as bona fide conservation use property. Because the superior court's analysis was founded on an erroneous construction of the bona fide conservation use covenant statute, we vacate the judgment and remand to the superior court for reconsideration.

The parties entered a stipulation of facts. The superior court conducted a hearing and made additional findings of fact, which the parties do not dispute. "On appeal, the application of law to undisputed facts is subject to de novo review." *Wheeler County Bd. of Tax Assessors v. Gilder*, 256 Ga. App. 478 (568 SE2d 786) (2002) (citation omitted).

The bona fide conservation use covenant statute is OCGA § 48-5-7.4. Under that provision,

> owners of "bona fide conservation use property," including property used for certain agricultural purposes and meeting other statutory

2

criteria and conditions, may apply to the county board of tax assessors for "current use assessment" of their property for purposes of calculating ad valorem taxes. If the application is granted, the property is assessed for tax purposes at 40 percent of its "current use value" instead of 40 percent of its "fair market value," OCGA § 48-5-7 (a), (c.2), resulting in tax savings.

*Morrison v. Claborn*, 294 Ga. App. 508, 509 n. 1 (669 SE2d 492) (2008) (citation omitted). When such an application is granted, "the landowner receives a significant tax advantage, and a portion of the tax burden is shifted to other land owners, [so] the qualifying landowner must make substantial promises and covenants." Daniels, Susan L., *Ad Valorem Taxation of Property: Provide for the Ad Valorem Taxation of Timber and Current Use Valuation/Taxation of Bona Fide Conservation Use Property and Bona Fide Residential Transitional Property*, 8 Ga. St. U. L. R. 181, 186 (1991). (Available at: http://scholarworks.gsu.edu/gsulr/vol8/iss1/34).

In pertinent part, the statute defines "bona fide conservation use property" to mean:

Not more than 2,000 acres of tangible real property of a single person, the primary purpose of which is any good faith production, including but not limited to . . . commercial production, from or on the land of agricultural products . . . , subject to the following qualifications: (A) Such property includes the value of tangible property permanently

3

affixed to the real property which is directly connected to such owner's production of agricultural products . . . and which is devoted to the storage and processing of such agricultural products . . . from or on such real property[.]

OCGA § 48-5-7.4 (a) (1). "Primary purpose" means the principal use to which the property is devoted. Ga. Comp. R. & Regs. r. 560-11-6-.02 (e). An "incidental, occasional, intermediate or temporary use [of the property] for some other purpose not detrimental to or in conflict with its primary purpose" does not prevent otherwise qualified property from being classified as bona fide conservation use property. Id. Permissible primary purposes include using the property for raising, harvesting, or storing crops; feeding, breeding, or managing livestock or poultry; producing plants or animals; and producing horticulture, dairy and livestock products. OCGA § 48-5-7.4 (a) (1) (E) (i) - (iv). OCGA § 48-5-7.4 (b) (1), which sets out additional rules for the qualification of conservation use property for current use assessment, provides in pertinent part, "[w]hen one-half or more of the area of a single tract of real property is used for a qualifying purpose, then such tract shall be considered as used for such qualifying purpose *unless some other type of business is being operated on the unused portion. . . .*" (Emphasis supplied.)

4

In order to obtain current use assessment, the owner of property that qualifies as bona fide conservation use property must "agree[] by covenant with the appropriate taxing authority to maintain the eligible property in bona fide qualifying use for a period of ten years . . . ." OCGA § 48-5-7.4 (d). Failure to maintain the property in qualifying use status breaches the covenant. OCGA § 48-5-7.4 (d). If a covenant is breached, the property is no longer eligible for current use assessment and the taxpayer must pay a penalty. OCGA § 48-5-7.4 (h), (l).

The Goolsbys own 448.5 acres in Terrell County. In order to obtain certain tax advantages, effective January 1, 2007, they applied for current use assessment and entered the property in a 10-year "conservation use assessment of agricultural property covenant agreement" under OCGA § 48-5-7.4. After entering the covenant, the Goolsbys began Goolsby Farm Supply, a commercial grain business, on a portion of the property. It maintains a website and is listed in the Yellow Pages as a grain dealer. The nature of Goolsby Farm Supply is not clear from the record before us; the bench trial at which Jason Goolsby testified about the business apparently was not recorded. In any event, no transcript of that trial was included in the appellate record.

The board notified the Goolsbys that they were in violation of their conservation use covenant, specifying that they "applied for a business license on 12/9/09 and a commercial business constitutes a breach of [their] covenant."

The Goolsbys appealed the board's decision to the Terrell County Board of Equalization, which upheld the decision. The Goolsbys then appealed to the superior court, which ruled that they had not violated the conservation use covenant. The board filed this appeal.

1. *Timeliness of the notice of appeal.*

The Goolsbys argue that we lack jurisdiction over the appeal because the board's notice of appeal is untimely. The superior court entered its order finding no breach of the covenant on October 30, 2012. The board filed a timely notice of appeal on November 6, 2012. But on November 9, 2012, the board expressly dismissed the notice of appeal in order to file a motion for reconsideration, and filed such a motion that same day. The superior court denied the motion for reconsideration on November 21, 2012. On November 28, 2012, within the 30-day period for filing a notice of appeal from the October 30 order, the board moved for an extension of time to file its notice of appeal. The superior court granted the board's motion for extension of time

6

until December 29, 2012 "to file the appropriate [n]otice of [a]ppeal." The board filed a notice of appeal on December 27, 2012.

The Goolsbys argue that because the order extending the time for filing the notice of appeal did not specify to which of the orders the extension applied, it is defective. But the superior court had the authority under OCGA § 5-6-39 (a) (1) and (c) to grant one 30-day extension of the time for filing the notice of appeal, and nothing in that statute required the court to specify precisely to which order the extension applied. The board's November 28 motion for an extension of time to file a notice of appeal was timely filed from the directly appealable October 30 order. OCGA § 5-6-39 (d). If, on the other hand, the board's motion for extension is construed, as the Goolsbys suggest, to have been a motion for extension of time to appeal from the denial of the motion for reconsideration, the motion would have been futile and the order granting it would be a nullity. See *Jim Ellis Atlanta v. Adamson*, 283 Ga. App. 116 (640 SE2d 688) (2006) (order denying motion for reconsideration not directly appealable). We therefore construe the superior court's grant of the motion for extension to render timely the December 27 notice of appeal.

We are required to "liberally construe[ the Appellate Practice Act] so as to bring about a decision on the merits of every case appealed and to avoid dismissal of

any case or refusal to consider any points raised therein." OCGA § 5-6-30. With this principle in mind, we conclude that the notice of appeal was timely from the directly appealable October 30 order, given the OCGA § 5-6-39 extension.

2. *The commercial grain business.*

(a) The board argues that under OCGA § 48-5-7.4 (b) (1), the Goolsbys breached the conservation use covenant by operating "some other type of business," the commercial grain business, on the property. The Goolsbys counter that they have not breached the covenant because the primary use of their property remains the good faith production of agricultural products, a qualifying purpose under the statute. See OCGA § 48-5-7.4 (a) (1). They contend that because the operation of the commercial business does not conflict with their production of agricultural products -- the primary purpose -- they have not breached the covenant. See Ga. Comp. R. & Regs. r. 560-11-6-.02 (e). In effect, they argue that Goolsby Farm Supply is simply an "incidental . . . use for some other purpose not detrimental to or in conflict with its primary purpose," and thus is permissible. Id.

In order to determine whether the operation of Goolsby Farm Supply breached the covenant, we are required to construe the meaning of OCGA § 48-5-7.4 (b) and Ga. Comp. R. & Regs. r. 560-11-6-.02 (e).

8

[C]ourts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless.. . . [A] court's duty is to reconcile, if possible, any potential conflicts between different sections of the same statute, so as to make them consistent and harmonious. . . . [I]n construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole. We apply the same principles of construction to administrative rules and regulations.

*Prince v. Bailey Davis, LLC*, 306 Ga. App. 59, 61-62 (701 SE2d 492) (2010) (citations omitted). And "OCGA § 48-5-7.4 creates an exception to the general rule in Georgia that tangible property value is assessed at 40 percent of fair market value, and, as such, the statute must be construed in the [b]oard's favor." *Morrison*, 294 Ga. App. at 512-513 (2) (citation omitted).

Addressing this issue, the superior court wrote, "No statutory authority or case law was cited by [the board] to prove that procuring or even operating a business on the subject property would result in a breach of the covenant, particularly when the business is consistent with the primary purpose of the subject property which is 'good faith' production of agricultural products." To the extent the superior court concluded that operating a business on the property never breaches a covenant, it erred. As

9

noted, OCGA § 48-5-7.4 (b) (1) provides, "[w]hen one-half or more of the area of a single tract of real property is used for a qualifying purpose, then such tract shall be considered as used for such qualifying purpose unless some other type of business is being operated on the unused portion." The statute does not expressly state what happens when "some other type of business is being operated on the unused portion," but the clear implication is that then, the "tract shall [not] be considered as used for" the qualifying purpose. Id. Yet an "incidental, occasional, intermediate or temporary use for some other purpose not detrimental to or in conflict with its primary purpose" does not prevent otherwise qualified property from being classified as bona fide conservation use property. Ga. Comp. R. & Regs. r. 560-11-6-.02 (e). Construing these provisions together, we conclude that if the taxpayer is operating "some other type of business," a business separate and apart from the commercial production from or on the land of agricultural products, and the business is not "incidental, occasional, intermediate or temporary" but is "detrimental to or in conflict with [the property's] primary purpose," then the land does not qualify for current use assessment under the statute. See OCGA § 48-5-7.4 (a) (1) ("'bona fide conservation use property' means property . . . the primary purpose of which is . . . commercial production, from or on

10

the land of agricultural products . . . ."). To the extent the superior court based its judgment on a different construction, it erred.

(b) The Goolsbys argue that even if OCGA § 48-5-7.4 (b) (1) prohibits the operation of a commercial business, that prohibition applies only when a taxpayer seeks to enroll his property in a conservation use covenant in the first instance. We disagree. OCGA § 48-5-7.4 (d) requires that, in order for property to qualify for current use assessment,

> the owner of such property [must] agree[ ] by covenant with the appropriate taxing authority *to maintain the eligible property in bona fide qualifying use* for a period of ten years beginning on the first day of January of the year in which such property qualifies for such current use assessment and ending on the last day of December of the final year of the covenant period.

(Emphasis supplied.) OCGA § 48-5-7.4 (g) provides, "no property shall maintain its eligibility for current use assessment under this Code section unless a valid covenant remains in effect and unless the property is continuously devoted to an applicable bona fide qualifying use during the entire period of the covenant." Similarly, Ga. Comp. R. & Regs. r. 560-11-6-.06 (3) provides that a "breach shall be deemed to occur upon the occasion of any event which would otherwise disqualify the property

11

from receiving the benefit of current use valuation." These provisions make clear that the qualifying use of the property must be continued for a taxpayer to retain the benefit of current use assessment.

Because the judgment in the Goolsbys' favor may have been based on an erroneous construction of OCGA § 48-5-7.4 (b) (1), we vacate that judgment and remand for reconsideration not inconsistent with this opinion.

*Judgment vacated and case remanded. Doyle, P. J., conurs. Boggs, J., concurs fully and specially.*

12

A13A0981. TERRELL COUNTY BOARD OF TAX ASSESSORS

v. GOOLSBY et al.

BOGGS, Judge, concurring fully and specially.

I agree with the majority that this case is properly before us, and that it must be remanded for clarification of the trial court's order. I write separately to note that in the absence of a transcript we must presume that the factual findings in the trial court's order are supported by the evidence.

The majority notes that one sentence of the trial court's order appears to incorrectly state that under no set of circumstances could the case or statutory law support a finding in favor of the appellant. And because we cannot discern from the record whether this incorrect statement of the law affected the trial court's factual findings, a remand is appropriate.

While the majority correctly notes that we apply a de novo standard of review to stipulated facts, we must defer to a trial court's factual findings unless clearly erroneous. *Lamad Ministries v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798, 806 n.3 (3) (602 SEd2 845) (2004). Some of the facts relied upon by the trial court were included in a stipulation. But, as the majority acknowledges, a hearing at which the appellees gave substantial testimony as to the nature of their farming operations was not reported.

There is a presumption in favor of the regularity and legality of all proceedings in the trial court, *Stegeman v. Heritage Bank*, 304 Ga. App. 172, 174 (1) (695 SEd2 340) (2010), and in the absence of a transcript or a statutory substitute, this court must assume that the evidence presented at the hearing supported the trial court's decision. *Siratu v. Diane Investment Group*, 298 Ga. App. 127, 128-129 (679 SE2d 359) (2009). We therefore must assume evidence was presented that "Goolsby Farm Supply" was a business "directly connected" with the "primary purpose" of the stipulated land use under OCGA § 48-5-7.4 and Ga. Comp. R. & Regs., r. 560-11-6-

.02: "raising livestock and raising and harvesting agricultural products, including grain and wheat."[1]

No evidence before us shows that the Goolsbys' business was a retail establishment such as the classic "farm supply" store selling everything from bridles and buckets to chicken feed and western wear. The missing transcript could have included testimony that, for example, the Goolsbys' purchase and sale of other farmers' agricultural products was a result of the varying feed requirements of their substantial herd of cattle. If the Goolsbys entered into output or requirements contracts with their neighbors, see OCGA § 11-2-306, and purchased more feed than their cattle consumed, they would necessarily sell that surplus; similarly, if they underestimated their herd's requirements or failed to grow sufficient feed, they would purchase the remainder. As the Goolsbys contended below and before this court, production of livestock would be impractical without the ability to buy, sell, and store animal feed on the property.

---

[1]Likewise, we must presume that the record supports the trial court's finding that the Goolsbys' occasional rental of their office for a banquet was "an incidental, occasional, intermediate or temporary use" within the meaning of Ga. Comp. R. & Regs., r. 560-11-6-.02 (e).

3

For these reasons, in the absence of the legal conclusion in the trial court's order, this court would be required to affirm.