**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2017**

# In the Court of Appeals of Georgia

A16A1856.  CHEROKEE  COUNTY  BOARD  OF  TAX  DO-071
ASSESSORS v. MASON.

DOYLE, Chief Judge.

This appeal arises from the trial court's determination that Milford Mason was entitled to a renewal beginning in 2013 of a ten-year Conservation Use Valuation Assessment ("CUVA"), pursuant to OCGA § 48-5-7.4,[1] by the Cherokee County Board of Tax Assessors ("the Board") as to certain real property. For the reasons that follow, we affirm.

"[A]nyone seeking [a tax] exemption must carry the burden of proof to show entitlement, and the exemption statute is strictly construed against the person claiming the exemption. Other than such burden to prove the exemption, the [Board]

---

[1] The portions of this Code section applicable to this case have not been amended since the time Mason filed his application in 2013.

has the burden of proof by a preponderance of evidence that its assessment is correct."[2] A tax payer may appeal a decision of the Board to the Board of Equalization,[3] and from there to the superior court, which performs a de novo appeal of a decision of the Board of Equalization.[4] On appeal from a superior court, this Court accepts the superior court's findings of fact unless clearly erroneous but applies a de novo standard of review to the court's application of the law to those facts as well as to its legal conclusions.[5]

> [C]ourts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless. A court's duty is to reconcile, if possible, any potential conflicts between different sections of the same statute, so as to make them consistent and harmonious. In construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole. We

---

[2] (Citations omitted). *Lamad Ministries v. Dougherty County Bd. of Tax Assessors*, 268 Ga. App. 798, 801 (1) (602 SE2d 845) (2004).

[3] See OCGA § 48-5-311 (e) (1) (i).

[4] See OCGA § 48-5-311 (g) (3).

[5] See *Lamad Ministries*, 268 Ga. App. at 806 n.3.

apply the same principles of construction to administrative rules and regulations.[6]

Pursuant to OCGA § 48-5-7.4 (a) (1) , a "'bona fide conservation use property' means . . . [n]ot more than 2,000 acres of tangible real property of a single person, the primary purpose of which is any good faith production, including but not limited to subsistence farming or commercial production, from or on the land of agricultural products or timber. . . ."[7] If a property owner obtains the status of a bona fide conservation use property, the result is a substantial reduction of the property tax assessment.[8]

In order to determine whether a property qualifies as a bona fide conservation use property, the legislature has set forth a non-exhaustive list of factors that a board or court may consider, including:

> (i) The nature of the terrain; (ii) The density of the marketable product on the land; (iii) The past usage of the land; (iv) The economic merchantability of the agricultural product; and (v) The utilization or

---

[6] (Punctuation omitted.) *Terrell County Bd. of Tax Assessors v. Goolsby*, 324 Ga. App. 535, 539 (2) (a) (751 SE2d 158) (2013).

[7] See also Ga. Comp. R. & Regs. r. 560-11-6-.02 (d), (e).

[8] See *Goolsby*, 324 Ga. App. at 536.

nonutilization of recognized care, cultivation, harvesting, and like practices applicable to the product involved and any implemented plans thereof[.][9]

This is the second appearance of this case before this Court. On November 17, 2015, this Court issued an unpublished opinion[10] addressing the trial court's November 19, 2014 order, which order also determined that Mason was entitled to the renewal of the CUVA.[11] In that opinion, this Court vacated the trial court's 2014 order, holding that "the trial court erred in applying OCGA § 48-5-7.4 (a) (1) to the extent that [(1) the trial court found that] the Board was not able to consider Mason's management of the timber on the Property as evidence that he was not engaged in the 'good faith production' of timber," and (2) the trial court determined that "the Property would automatically qualify for a renewal of the CUVA exemption because there was no testimony that the usage of the Property changed between the prior

---

[9] OCGA § 48-5-7.4 (a) (1) (D). See also Ga. Comp. R. & Regs. r. 560-11-6-.02 (d) (3).

[10] Georgia Court of Appeals Rule 33 (b) ("An unreported opinion is neither a physical nor binding precedent but establishes the law of the case as provided by OCGA § 9-11-60 (h).").

[11] See *Cherokee County Bd. of Tax Assessors v. Mason*, Case No. A15A1086 (Nov. 17, 2015) (unpublished).

awards of the CUVA exemption to Mason's property and his 2013 application."[12] This Court remanded the case to the trial court for further consideration of the case based on the factors set forth in OCGA § 48-5-7.4 (a) (1) (D).

At the hearing prior to the first appeal, Mason testified that he originally applied for and obtained a CUVA in 1993 and reapplied for and was again granted a CUVA in 2003.[13] Mason testified that the majority of the tract was wooded with poplar, and he had harvested the wood approximately 10-12 years ago, earning $14,000.[14] Mason provided a number of pictures showing examples of the density of the poplar trees across most of the property, and he testified that he provided some of those photographs or similar photographs to the Board. Mason testified that about four or five years earlier he started row farming less than one acre of the property, selling the excess produce; he testified that the sales did not really generate a profit.

---

[12] Id. at *8-*11.

[13] In 1993, the property consisted of more than ten acres. Although the Board contends otherwise in its brief, when Mason filed for a CUVA in 2003, the property was listed as being under ten acres. Mason notified the Board of an ownership change in 2010, and the previously applied CUVA remained in effect.

[14] Mason did not provide supporting documentation for this sale, but he testified that he provided his accountant at the time with the documents and believed he had reported the income to the IRS.

5

Along with his 2013 CUVA application, Mason attached copies of the Schedule F he had filed with his federal tax returns from 2011 and 2012.

On cross-examination, Mason admitted that he had a rental home on the tract. On an aerial photograph provided by the Board, Mason indicated the rental home's location, which showed the house was on the tract at issue; he testified that the home had been on the property the entire time he had owned it—approximately 25 years. Mason's rental income from the house was $600 per month from the current tenant. When asked on cross-examination, Mason admitted that he had no timber or forestry management plan, he was unaware if anyone from the office ever inspected the property, and he was never contacted about an inspection.

Trey Stephens from the Tax Assessors Office testified at the hearing, and he testified that he inspected the property in September 2013, after the Board denied the CUVA and prior to Mason's appeal of the denial to the Board of Equalization. Stephens stated that another employee did an initial inspection of the property before the May 2013 denial of Mason's application, but that individual did not appear at the hearing. Stephens also stated that he did not see any photographs appended to Mason's CUVA renewal application, but he did submit a copy of his Schedule F. Stephens testified that he saw the garden and trees "seemingly incidental or unkept

6

with underbrush and undergrowth." Stephens testified that it did not appear to him that Mason was cultivating timber because of the "substantial undergrowth" and no "logging road or access road," but he admitted he was not a certified forester.

On remand, the trial court held a hearing on March 16, 2016, which consisted only of argument between the parties without further introduction of evidence. Thereafter, the court entered an order on April 6, 2016, again finding that the property qualified as a bone fide conservation use property and ordering the Board to apply the CUVA to the property. The Board now appeals the April 6 order, arguing specifically that the trial court erred by (1) finding that despite Mason's lack of management of the timber his efforts qualify as "good faith production of agricultural products or timber"; (2) finding that photographs of standing timber are sufficient to provide proof of a bona fide conservation use; (3) finding that the Board did not conduct a visual inspection of the property prior to denying Mason's application; and (4) finding that timber production was the primary use of the property.

"The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of

review applies where the appellate court determines that the issue was of law, not fact."[15]

1. The Board argues that the trial court erred by finding that Mason's actions constituted "good faith production, including but not limited to subsistence farming or commercial production, from or on the land of agricultural products or timber," pursuant to OCGA § 48-5-7.4.

In this case, Mason testified that he previously had harvested poplar trees, and he intentionally left younger trees at that time so that they could mature and be harvested later. There is no statutory requirement that Mason have a specific timber management plan or that he do continuous active management of the poplar stands. Mason provided visual evidence of the type and density of the stands, and the aerial photograph of the tract shows tree coverage over almost all of the nine plus undeveloped acres. Mason also testified that he would have reported earnings from the harvesting to the IRS, and he filed a Schedule F based on his row farming the two years prior to reapplying for the CUVA.[16] While the Board contends that the trial

---

[15] (Citation and punctuation omitted.) *Simmons v. Bd. of Tax Assessors of Effingham County*, 268 Ga. App. 411 (1) (602 SE2d 213) (2004).

[16] Obviously, his current Schedule F would not contain income from timber because he did not sell timber that year.

court impermissibly shifted the burden to it, the trial court simply made a credibility determination, accepting Mason's account of his past harvesting and intent to harvest poplar in the future. These findings were not clearly erroneous based on the record before the court.[17] OCGA § 48-5-7.4 (a) does not require intelligent or profitable timbering to meet the standard of "good faith production," instead it requires a showing that the individual is using the designated land to produce timber, crops, or other agricultural products, even if the result is at the level of substance farming. And, as noted above, the factors to be considered are non-exhaustive, and the plain language of the statute does not require that each and every item be met in order to qualify.[18] Accordingly, because the trial court's application of the law was correct and its findings of fact were not clearly erroneous, this enumeration is without merit.

2. The Board also argues that the trial court erred by finding that Mason's photographs of standing timber were sufficient to provide proof of a bona fide conservation use and that the trial court erred by finding that it did not conduct a visual inspection of the property as required by OCGA § 48-5-7.4 (b) (2) prior to denying Mason's application.

---

[17] See *Lamad Ministries*, 268 Ga. App. at 806 n.3.

[18] Cf. *Goolsby*, 324 Ga. App. at 539 (2) (a).

With regard to tracts of land under ten acres, OCGA § 48-5-7.4 (b) (2) requires that

> [t]he owner . . . shall be required by the tax assessor to submit additional relevant records regarding proof of bona fide conservation use for qualified property that on or after the effective date of this paragraph is either first made subject to a covenant or is subject to a renewal of a previous covenant. If the owner of the subject property provides proof that such owner has filed with the [IRS] a Schedule E, reporting farm related income or loss, or a Schedule F, with Form 1040, or, if applicable, a Form 4835, pertaining to such property, the provisions of this paragraph, requiring additional relevant records regarding proof of bona fide conservation use, shall not apply to such property. Prior to a denial of eligibility under this paragraph, the tax assessor shall conduct and provide proof of a visual on-site inspection of the property; Reasonable notice shall be provided to the property owner before being allowed a visual, on-site inspection of the property by the tax assessor.

(a) *Photographic evidence.* Pretermitting whether the trial court erred by making any finding regarding Mason's presentation of photographs in order to meet the requirement of OCGA § 48-5-7.4 (b) (2), the Board admitted at the hearing that Mason presented an IRS Schedule F with his application, and such evidence of filing this Schedule with the IRS in relation to the property specifically excludes application of the additional records portion of OCGA § 48-5-7.4 (b) (2).

10

(b) *Failure to conduct a visual inspection.* OCGA § 48-5-7.4 (b) (2) requires that prior to denial of a CUVA application for property under ten acres, "the tax assessor shall conduct and provide proof of a visual on-site inspection of the property[, and r]easonable notice shall be provided to the property owner before being allowed a visual, on-site inspection of the property by the tax assessor."

The record shows that Mason testified that he was not contacted by anyone from the Board to inspect the property prior to the denial of his application, and although Stephens testified that another Board employee made an inspection, no such report by that employee was presented at the hearing, the employee that allegedly conducted the inspection did not testify at the hearing, and there was no testimony from Stephens regarding whether the other employee contacted Mason prior to conducting an inspection or the nature of the employee's inspection. Accordingly, the trial court did not err by finding that the Board was prohibited from applying OCGA § 48-5-7.4 (b) (2) because it failed to conduct an on-site inspection.

4. Finally, the Board argues that the trial court erred by finding that timber production was the primary use of the property because of the rental house. But at the hearing, the attorney for the tax assessor's office did not dispute that the acres immediately around the house are subtracted from the remainder of the tract as per

11

the statute.[19] There is no evidence that Mason rented out any portion of the tract aside from the excluded residential portion; therefore, the trial court did not err by finding that his rental of the residence did not prohibit his qualification for the CUVA.[20]

*Judgment affirmed. Andrews and Ray, JJ., concur.*

---

[19] See OCGA § 48-5-7.4 (a) (1) (B) ("Such property excludes the entire value of any residence and its underlying property" equal to "the minimum lot size required for residential construction by local zoning ordinances or two acres, whichever is less.").

[20] Cf. *Goolsby*, 324 Ga. App. at 538-539 (2) (a).