**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 13, 2014**

# In the Court of Appeals of Georgia

A13A1752. SPH GLYNN, LLC v. GLYNN COUNTY BOARD OF     DO-090
    TAX ASSESSORS.

A13A1753. GLYNN COUNTY BOARD OF TAX ASSESSORS v.     DO-091
    SPH GLYNN, LLC.

DOYLE, Presiding Judge.

In this property tax appeal, in Case No. A13A1752, SPH Glynn, LLC ("SPH"),

appeals from an order of the Superior Court of Glynn County denying an award of

attorney fees under OCGA § 48-5-311 (g) (4) (B) (ii). In Case No. A13A1753, the

Glynn County Board of Tax Assessors ("the Board") appeals from the same order

granting partial summary judgment to SPH on the applicability of a moratorium on

property tax increases under former OCGA § 48-5B-1. The two appeals arise from

the same order on the same facts, so we have consolidated them for review. For the

reasons that follow, we reverse and remand in A13A1752, and we affirm in A13A1753.

The record is not in dispute, and it shows that in September 2008, SPH purchased a 6,881-acre parcel of timberland (the "subject property") from Plum Creek Timberlands LP. That parcel was carved out of a much larger parcel, the remainder of which was retained by Plum Creek. In 2008, the Board gave the subject property a fair market value of the equivalent of $379.60 per acre for a total fair market value of $2,612,027.60.[1] At the time of 2008 sale, the subject property was not given a separate parcel number, but as of January 1, 2009, the Board assigned the subject property a new parcel number (02-02828) and gave the property a fair market value of $8,257,200 ($1,200 per acre) as of January 1, 2009, as well as for the 2010 and 2011 tax years. SPH did not appeal the 2009 valuation, but it did contest the 2010 and 2011 valuations, which were ultimately appealed to the superior court and consolidated, and which are the subject of this appeal.[2]

---

[1] These figures are undisputed and based on the Board's 2008 valuation of the land containing the parcel that became the subject property.

[2] SPH challenged the 2010 valuation which was sent to non-binding arbitration resulting in a valuation of $4,564,680, and the Board appealed that valuation. SPH subsequently appealed the 2011 valuation, which was sent to the Board of Equalization, which valued the parcel at $6,258,591, and SPH appealed that valuation.

Meanwhile, in May of 2009, the Governor signed into law HB 233, codified at OCGA § 48-5B-1, which provided for a moratorium on increases in the assessed value of property for the taxable years beginning on or after January 1, 2009. Based on this, SPH moved for summary judgment in the superior court arguing that the fair market value of the subject property should be capped at the 2008 level, i.e., $2,612,027. In the same order, the superior court denied SPH's motion for attorney fees under OCGA § 48-5-311 (g) (4) (b) (ii). In Case No. A13A1752, SPH appeals the denial of attorney fees; in Case No. A13A1753, the Board appeals the capped valuation. Because the award of fees depends on the outcome of the merits, we address Case No. A13A1753 first.

*Case No. A13A1753*

1. The Board argues that the trial court erred by ruling that the moratorium in OCGA § 48-5B-1 applied to the subject property because (a) SPH waived that argument, and (b) the subject property did not exist as a separate parcel until January 1, 2009, when the moratorium went into effect.

(a) *Waiver*. The Board argues that the superior court erred by ruling that the moratorium in OCGA § 48-5B-1 applied to the subject property because SPH failed to raise the moratorium issue before the Board of Examiners or in the arbitration

3

during the administrative appeal process. SPH first raised the moratorium issue in an amended pre-trial order in the superior court and later in its motion for summary judgment.[3] Therefore, the Board argues that the issue was not preserved for review by the superior court. We disagree.

As noted by the superior court, tax appeals to the superior court "shall constitute a de novo action."[4] In such an action,

> the whole record is brought up from the court below, and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case. Such a case must be tried anew as if no trial had been had. It is not the province of the superior court on such an appeal to review and affirm or review the rulings of the trial tribunal, but to try the issue anew and pass original judgments on the questions involved as if there had been no previous trial.[5]

---

[3] In briefing on appeal and below, SPH concedes that it did not challenge the 2009 valuation "due to an internal oversight."

[4] OCGA § 48-5-311 (g) (3).

[5] (Punctuation omitted.) *Fulton County Bd. of Tax Assessors v. NABISCO*, 296 Ga. App. 884 (676 SE2d 41) (2009), quoting *Weeks v. Gwinnett County Bd. of Tax Equalization*, 139 Ga. App. 37, 37-38 (1) (227 SE2d 865) (1976), overruled on other grounds by *Gilmer County Bd. of Tax Assessors v. Spence*, 309 Ga. App. 482, 483 (1) (711 SE2d 51) (2011).

We are mindful that cases have held that the superior court proceeding is a de novo review of "only those decisions of the Board of Equalization on questions presented to it or incident thereto . . . . [Thus,] the appeal . . . is a de novo investigation into the merits of the contentions of the taxpayers [in the lower administrative proceeding], with the right to introduce evidence and be heard on the questions incident thereto."[6] For this reason, our courts have held that if a taxpayer challenges only the valuation, then she cannot introduce a new ground, e.g., lack of uniformity, in the superior court, because that issue was not challenged in the lower administrative appeal.[7]

But in this case, the Board's value determination was consistently challenged throughout, and the applicability of the moratorium "unquestionably impacts the assessed values of the property at issue."[8] The Board's notice of assessment sent to

---

[6] (Punctuation omitted.) *Camp v. Boggs*, 240 Ga. 127, 128 (1) (239 SE2d 530) (1977).

[7] See id.

[8] *We, the Taxpayers v. Bd. of Tax Assessors*, 292 Ga. 31, 33-34 (1) (734 SE2d 373) (2012). We note that this case also stated that "the applicability of OCGA § 48-5B-1 could, and should, have been raised in an appeal under OCGA § 48-5-311." Id. at 34. But this statement was in the context of determining the availability of a separate mandamus action on valuation grounds absent an administrative appeal under OCGA § 48-5-311. The Court held that the taxpayers were obligated to pursue the administrative remedy rather than seek equitable relief in the superior court. See id. at 34 (1). Because of that different context, we do not view that case as controlling

5

SPH explicitly referenced the moratorium and its impact on the 2009, 2010, and 2011 tax years , and it took the position that the moratorium value was greater than the 2008 value for the subject property. Likewise, the valuations arrived at during arbitration and by the Board of Equalization also exceeded the 2008 value. Therefore, the Board, the arbitrator, and the Board of Equalization had all made determinations as to value, and the applicability of the moratorium, as part of the valuation issue, was properly reached by the trial court in the de novo appeal of the value determination.

(b) *January 1, 2009 creation of a new parcel number*. OCGA § 48-5B-1 provided[9] as follows:

> (a) The General Assembly finds that the citizens and property owners of this state are experiencing a crisis in the reduction of value of tangible property of unprecedented magnitude and that it is in the best interests of this state that immediate action be taken to secure the economic stability of all Georgians. This crisis is having a devastating effect on the economy of the State of Georgia, and this Code section is enacted in order to provide for more effective regulation and management of the finance and fiscal administration of the state . . . .

the question before us.

[9] By its own terms, the Code section had a sunset date of January 10, 2011, and it was effectively repealed as of that date. See OCGA § 48-5B-1 (k).

6

(b) In recognition of the emergency situation and fiscal conditions set forth in subsection (a) of this Code section . . . , for taxable years beginning on or after January 1, 2009, and continuing only until the Sunday immediately preceding the second Monday in January, 2011, a moratorium is declared on all increases in the assessed value of all classes of all subjects of property which are subject to ad valorem taxation property except as specifically permitted under this Code section. The rate of increase of the assessed value of property for county, county school district, municipal, or independent school district ad valorem tax purposes shall not exceed from one taxable year to the succeeding taxable year 0 percent except as otherwise permitted in this Code section.

The effect of this language was to cap the assessed value of real property, subject to certain exceptions, at the 2008 level.[10]

The Board argues that it did not violate the moratorium essentially because the subject property had never been taxed as a separate property prior to 2009, so there was no 2008 value to freeze. But this misconstrues the statute, which by its plain language, applies to "all increases in the assessed value of all classes of all subjects of property."[11] It was not written in terms of "parcels," but in terms of "property," and

---

[10] See 1 Pindar's Ga. Real Estate Law & Procedure § 4:22, n. 1 (7th ed. 2013).

[11] OCGA § 48-5B-1 (b).

7

with broad language including all property subject to ad valorem taxation. It is undisputed that the subject property existed in 2008 and was taxed in that year at a certain value.[12] Thus, the fact that it was assigned a new parcel number does not negate its valuation history for purposes of the broadly-worded moratorium. In the statute, passed in 2009, the General Assembly made clear its intent to address the economic conditions at that time and the negative effect on property values. Allowing the Board to ignore the moratorium by assigning a new parcel number would frustrate this clearly stated purpose.

Further, the General Assembly apparently did contemplate that property values might change due to subdivision and redevelopment, and it accounted for such changes by carving out an exception to the moratorium when property is subdivided or combined with other property *and the use of the property changes*.[13] It is

---

[12] The 2008 value was equivalent to $379.60 per acre for a total fair market value of $2,612,027, and an assessed value of $1,044,810.

[13] See OCGA § 48-5B-1 (g) ("If property is rezoned, subdivided, or combined with other property at the request of the owner of such property and the use of such property is changed to conform with the use authorized or caused by such rezoning, subdivision, or combination with other property, such property shall be valued for ad valorem tax purposes at its fair market value."). See also subsection (e): "If property or interests therein are sold or transferred, the assessed value of such property for ad valorem tax purposes shall not exceed the most recent value established under [the moratorium]."

8

undisputed that the uses of the subject property (timberland, recreational hunting, and wildlife management) did not change during the relevant period, so this exception does not apply. Therefore, the superior court correctly ruled that the moratorium's cap applied to the Board's assessed values for 2010 and 2011.

*Case No. A13A1752*

In this case, SPH appeals the denial of its request for attorney fees under OCGA § 48-5-311 (g) (4) (B) (ii). That Code section provides as follows:

> If the final determination of value on appeal is 80 percent or less of the valuation set by the county board of equalization or hearing officer as to commercial property, or 85 percent or less of the valuation set by the county board of tax assessors as to other property, the taxpayer, in addition to the interest provided for by this paragraph, shall recover costs of litigation and reasonable attorney's fees incurred in the action.

Here, the trial court remanded the case to the Board for reassessment under the moratorium, so it concluded that a "final determination of value" had not been made and attorney fees were not warranted.[14] But based on our (and the trial court's) ruling

---

[14] The trial court ruled that the "final determination of value" had not been made, since, in theory, the BOA might value the property lower than the capped level of $2,612.027.60. But this ignores the fact that the BOA had already valued the property at nearly four times this value for the period in question.

that the moratorium applied, the proper valuation was capped at the BOA's 2008 value, i.e., $2,612,027.60. When compared to the Board's valuation ($8,257,200), the capped value meets the statutory threshold mandating that the taxpayer "shall recover costs of litigation and reasonable attorney's fees incurred in the action." SPH conceded that the 2008 value was not excessive, and it presented no evidence showing it to be an excessive valuation. Thus, absent this argument or evidence, the final determination of value in this case was $2,612,027.60, and this result required an attorney fee award under OCGA § 48-5-311 (g) (4) (B) (ii).[15]

Accordingly, we remand the case to the superior court for determination of the attorney fee award.

*Judgment reversed in A13A1752 and case remanded; judgment affirmed in A13A1753. McFadden and Boggs, JJ., concur.*

---

[15] See *Fulton County Board of Tax Assessors v. Lamb*, 298 Ga. App. 618, 620 (680 SE2d 656) (2009) (approving of trial court's analysis that it "is the public policy of this State . . . that if [the taxpayers have] to go to the mat and . . . extract that concession out of the County. . . then they . . . are entitled to recover attorney's fees."). See also *Fulton County Bd. Of Tax Assessors v. Calliope Properties, LLC*, 315 Ga. App. 405, 408 (3) (727 SE2d 198) (2012) (Board cannot negate attorney fee mandate by stipulating to a valuation to avoid a "final determination").