**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 16, 2024**

# In the Court of Appeals of Georgia

A24A0526. 4918 COVINGTON HWY, LLC v. DEKALB COUNTY TAX ASSESSORS.

PADGETT, Judge.

This appeal arises from a dispute between 4918 Covington Hwy, LLC ("the taxpayer") and DeKalb County Tax Assessors ( "the County") concerning the assessment of ad valorem tax of a commercial property. The taxpayer appealed the County's initial assessment to the DeKalb County Board of Equalization, which affirmed the assessment. The taxpayer then appealed to the superior court, which entered a final order assessing the value of the subject property higher than that of the County's initial assessment and higher than the value assessed by the Board of Equalization. On appeal to this Court, the taxpayer challenges the superior court's

ruling as well as its denial of the taxpayer's motion for directed verdict. For the reasons that follow, we affirm.

Typically, "[o]n appeal from a superior court, this Court accepts the superior court's findings of fact unless clearly erroneous but applies a de novo standard of review to the court's application of the law to those facts as well as to its legal conclusions." *Cherokee County Bd. of Tax Assessors v. Mason*, 340 Ga. App. 889, 890 (798 SE2d 32) (2017). However, there is no transcript of the bench trial in this case. "In the absence of a hearing transcript or any record evidence to the contrary, this Court must presume that the trial court properly considered the evidence before it and that its factual findings are supported by the evidence." *Befekadu v. Addis Intl. Money Transfer*, 339 Ga. App. 806, 807 (1) (795 SE2d 76) (2016).

Turning to the facts of the case as recited in the superior court's order, the subject property is a retail shopping center that consists of an auto service center, an auto retail store, a title pawn shop, and a church. The County initially assessed the subject property at $2,553,000 for tax year 2020 using a computer-assisted mass appraisal ("CAMA") system. The taxpayer appealed that assessment to the DeKalb County Board of Equalization, which affirmed the CAMA system's appraisal. The

taxpayer then filed suit under OCGA § 48-5-311(g), which provides for de novo appeal proceedings in superior court. The superior court conducted a bench trial. At the trial, the County presented evidence including testimony from two expert witnesses. The taxpayer's evidence consisted solely of the testimony of its owner as a lay witness.

The superior court found that the County's first expert testified about the three approaches to appraising real property under the Georgia Appraisal Procedures Manual ("the APM"). According to the witness, the "cost approach" is the best method for valuing commercial properties that have limited income and sales data available, such as auto service garages. The "sales comparison approach" is best when valuing properties that commonly sell on the open market, such as residential properties. The "income approach" is best when assessing income-producing properties, like retail shopping centers. The expert testified that appraisers in the public and private sector commonly rely on data from CoStar - a database that aggregates and stores reliable market information - when applying the income approach. The expert testified that the APM and Georgia law direct local government officials to favor the income approach for income-producing properties provided there is sufficient market data available. The expert testified that like nearly every other

county in Georgia, the County initially appraises all property in its jurisdiction using CAMA. CAMA generates a value based on market data. CAMA categorizes properties based on neighborhood and land use code ("LUC") data, and chooses which appraisal approach to use for any given property based on the property's LUC. CAMA generally uses the cost approach when assessing value of an auto service garage (LUC 332) because, in most cases, there is insufficient market data to support a sales comparison or income approach. Once a taxpayer appeals the CAMA assessment, the County assigns an appraiser to conduct an individualized analysis of the appealed property to determine whether the CAMA assessment accurately reflects fair market value. Sometimes the appraiser agrees with the CAMA assessment, but not always.

The superior court found the County's second expert testified that the property at issue is a multi-use retail development with tenants of various types. The second expert testified that he was assigned to conduct an analysis of the property after the taxpayer appealed to the Board of Equalization. The CAMA system used the cost approach because the property was coded as LUC 332. The expert testified that he disagreed with the LUC 332 classification and concluded that the correct classification

was a multi-tenant neighborhood shopping center (LUC 343). Because the property is an income-producing property, the second expert determined that the income approach was the correct approach to use. In making this determination, he looked at CoStar data to obtain typical market rents, vacancies, expenses, and capitalization rates. He projected a gross operating income by estimating a per-square-foot value, subtracted typical expenses, then capitalized the net operating income at 8% to arrive at a fair market value of $4,059,525.

The superior court's order found that the taxpayer's lay witness testified the fair market value of the property was $770,200. The superior court discounted the lay witness's testimony because he did not meaningfully contest the second expert witness's testimony and instead focused his testimony on the value of four properties in the surrounding neighborhood. The superior court found that three of the four properties referenced by the taxpayer were not "comparable" to the subject property. The superior court also noted that the lay witness conceded that the CoStar data necessarily accounted for the value of the fourth property that the taxpayer suggested was comparable.

The superior court determined that the income approach is the appropriate approach for determining the fair market value for income-producing properties like the subject property. The superior court also found that the income approach is more accurate and ensures that fair market values are uniform and equalized to the surrounding market based on a broad range of similar properties in the surrounding area rather than a few cherry-picked individual properties that may not accurately reflect market conditions. The superior court found that the fair market value of the property for tax year 2020 was $4,059,525. This appeal followed.

1. The taxpayer argues the superior court violated OCGA § 48-5-311 (e) (9), when it increased the 2020 fair market value from $2,550,300, the value in the notice of assessment, to $4,059,525. We disagree. Under OCGA § 48-5-311 (e) (9),

> Notwithstanding any other provision of law to the contrary, on any real property tax appeal made under this Code section on and after January 1, 2016, the assessed value being appealed may be lowered by the deciding body based upon the evidence presented but cannot be increased from the amount assessed by the county board of tax assessors. This paragraph shall not apply to any appeal where the taxpayer files an appeal during a time when subsection (c) of Code Section 48-5-299 is in effect for the assessment being appealed.

But that section only applies to county boards of equalization, arbitrators, or hearing officers. OCGA § 48-5-311 (e) (1) (A). Appeals of decisions of county boards of equalization, hearing officers, or arbitrators to superior court are governed by OCGA § 48-5-311 (g). Such appeals are de novo actions, and the board of tax assessors has the burden of proving its opinions of value and the validity of its proposed assessment by a preponderance of the evidence. OCGA § 48-5-311 (g) (3). Moreover, OCGA § 48-5-311 (g) (4) (B) (iii) contemplates the superior court's final determination of value on appeal may be greater than the valuation set by the county board of equalization. See, e.g., *Fulton County Bd. of Tax Assessors v. NABISCO*, 296 Ga. App. 884, 886 (676 SE2d 41) (2009) (ruling that the final determination of value on appeal can be greater than the valuation set by the board of equalization).

While the Court notes that OCGA § 48-5-311 (e) (9) caps the amount of tax to the amount assessed by the county board of tax assessors, applying that cap to the superior court's final determination would conflict with OCGA § 48-5-311 (g) (B) (iii), which contemplates the superior court, after a de novo review, increasing the final value above the amount assessed by the county board of tax assessors. Reading OCGA

§ 48-5-311 (e) (9) as a bar to the superior court's final determination renders OCGA

§ 48-5-311 (g) (3) meaningless.

Our Court has stated we "must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless." *DeKalb County Board of Tax Assessors v. Astor Atl, LLC,* 349 Ga. App. 867, 869 (826 SE2d 685) (2019) (citation and punctuation omitted). Further, this Court has stated that

> tax appeals to the superior court "shall constitute a de novo action." In such an action, . . . either party is entitled to be heard on the whole merits of the case. Such a case must be tried anew as if no trial had been had. It is not the province of the superior court on such an appeal to review and affirm or review the rulings of the trial tribunal, but to try the issue anew and pass original judgments on the questions involved as if there had been no previous trial.

*Sph Glynn, LLC v. Glynn County Bd. of Tax Assessors,* 326 Ga. App. 196, 197-198 (1) (a) (756 SE2d 282) (2014) (citation and punctuation omitted). Therefore, if OCGA § 48-5-311 (e) (9) applied to appeals to superior court, OCGA § 48-5-311 (g) (3) would be meaningless because the superior court would not be permitted to conduct a de novo review and instead would be limited to the findings of the initial tax assessment

preventing the case from being heard anew. Accordingly, the taxpayer has not shown that the superior court erred as a matter of law by assessing the value of the subject property higher than the amount confirmed by board of equalization.

2. Next, the taxpayer argues in multiple enumerations of error that the superior court erred by denying its motion in limine seeking to exclude evidence of the income approach valuation and conducting its de novo hearing with evidence of a different methodology than was presented prior to the appeal to superior court. We disagree. OCGA § 48-5-311 (g) (3) expressly states that appeals to the superior court shall constitute de novo actions. Moreover, "[i]n a tax appeal before the superior court, we have been clear that the whole record is brought up from the court below, and all competent evidence shall be admissible on the trial thereof, whether adduced on a former trial or not; either party is entitled to be heard on the whole merits of the case." *Bainbridge Ltd.*, 362 Ga. App. at 661 (3) (citation and punctuation omitted). See also OCGA § 48-5-311 (g) (3). ("The board of tax assessors shall have the burden of proving its opinions of value and the validity of its proposed assessment by a preponderance of evidence."). Therefore, the taxpayer has failed to show the superior

court erred by denying its motion in limine and considering evidence of the income approach to valuation.

3. In two enumerations of error, the taxpayer asserts the superior court erred by denying its motion for directed verdict and allowing the County to violate uniformity requirements with its proposed assessment. We disagree. The taxpayer argues the County violated the Uniformity Clause of the Georgia Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The taxpayer cites *Dade County v. Eldridge,* 229 Ga. App. 401 (494 SE2d 106) (1997), alleging the County's appraisal constituted a prohibited "spot reappraisal."

"All property shall be returned for taxation at its fair market value." OCGA § 48-5-6. "A county's appraisers are required to 'base their decisions regarding the taxability, uniform assessment, and valuation of real property on the circumstances of such property on January 1 of the tax year for which the assessment is being prepared.'" *Bainbridge,* 362 Ga. App. at 657 (1) (citations and punctuation omitted). "The essence of this duty is to see that all taxable property within the county is assessed and returned at its fair market value and that fair market values

as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes." Id. (citation and punctuation omitted). "[P]iecemeal or spot reappraisals of this sort, following at a later time after a general appraisal of residential property throughout the jurisdiction, which result in a significant increase in taxes without apparent regard to any equalization between taxpayers, are contrary to the statutory law of this State and void." *Dade County*, 229 Ga. App. at 402.

Here, the record supports the superior court's finding that the County presented evidence of uniformity and equalization. The superior court found that the evidence presented at trial supported its finding that the County proved that the second appraiser did not engage in a prohibited spot reappraisal but, instead, consulted CoStar data and made a thorough appraisal of the property in comparison with other similarly situated property within the county. We agree with the trial court that the evidence presented makes this case easily distinguishable from the facts in *Dade County.* In *Dade County,* the appraiser rode through the county and when she came upon the subject property, she concluded that she could not purchase the property for the assessed value, performed no

additional comparison of similarly situated parcels and provided no evidence to support her subjective opinion. *Dade County,* 229 at 401. In this case, the second expert consulted CoStar which necessarily compared the value of the taxpayer's property to similar properties in the same geographical area in reaching his opinion as to the value of the taxpayer's property. The superior court specifically considered the holding in *Dade County* and found that it was factually distinguishable. In the absence of a transcript, we presume that the factual findings are supported by evidence. *Befekadu,* supra. Therefore, the superior court did not err in denying taxpayer's motion for directed verdict and concluding the County met the standard of uniformity.

4. In multiple enumerations of error, the taxpayer argues that the superior court erred in concluding that the County's use of CoStar data satisfied uniformity and equalization requirements and that the County impermissibly valued similar properties using different methodologies. We disagree.

Georgia's Constitution requires that "all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Ga. Const. of 1983, Art. VII, Sec. I, Par. III. The uniformity clause simply requires

that for purposes of valuing property, all counties must use uniform methods for valuing similar property in similar locations. See *Hawes v. Conner*, 224 Ga. 567, 568 (163 SE2d 724) (1968), (Ga. Const. Art. VII, Sec. I, Par. III (a) "means that the levy for county purposes must be uniform throughout the county. It also means that the levy for State purposes must be uniform throughout the State."). While the uniformity clause may be violated by improper discrimination in the imposition of taxes, *Decatur Tax Payers League v. Adams, Inc.*, 236 Ga. 871, 874 (226 SE2d 69) (1976), that is not the situation presented here. The superior court found the CoStar data incorporated the value of other like properties and the taxpayer conceded on cross-examination that one comparable property that the taxpayer suggested should be relied upon was accounted for in the data relied on by the County in determining the fair market value. Moreover, the County's second expert testified that the initial classification of the property as a LUC 332 was wrong and that the property, which is a multi-use retail development with various tenants, is more properly classified as a LUC 343 parcel. In light of this determination, and in the absence of a trial transcript or any other evidence supporting taxpayer's claim, taxpayer cannot show that the superior court erred in

concluding the County satisfied uniformity and equalization requirements.

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*